```
1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF VIRGINIA
2                       HARRISONBURG DIVISION

3    UNITED STATES OF AMERICA,

4                         Plaintiff,
                                          No. 5:10-CR-15
5         vs.                             Harrisonburg, Virginia
                                          June 25, 2012
6    NAKIA HEATH KELLER,

7                         Defendant.

8           TRANSCRIPT OF GUILTY PLEA PROCEEDINGS
              BEFORE THE HONORABLE GLEN E. CONRAD
9                 UNITED STATES DISTRICT JUDGE.

10   APPEARANCES:

11   For the Government:

12   JEB T. TERRIEN
     United States Attorneys Office
13   116 N. Main Street, Room 130
     Harrisonburg, VA 22802
14   540-432-6636

15


16   For the Defendant:

17   FREDERICK THEODORE HEBLICH, JR.
     Federal Public Defenders Office
18   401 E. Market Street, Suite 106
     Charlottesville, VA 22902
19   434-220-3380

20

21   Court Reporter:    Carol Jacobs, Official Court Reporter
                        Registered Diplomate, Realtime Reporter
22                      U.S. District Court
                        1101 Court Street
23                      Lynchburg, VA 24504
                        434-847-5722, ext. 3
24
         Proceedings recorded by mechanical stenography;
25   computer-assisted transcription.
```

```
1          (Call to Order of the Court at 1:10 p.m.)

2               THE COURT:  Good afternoon.

3               MR. TERRIEN:  Good afternoon, Your Honor.

4               THE COURT:  I'll ask Ms. Moody to announce the

5     style of the next case, please.

6               THE CLERK:  United States versus Nakia Heath

7     Keller, Criminal Action 5:10-CR-15, defendant two, for a

8     change of plea hearing.

9               THE COURT:  Mr. Heblich, as you heard, Ms. Moody

10    has announced this case as one in which she thinks a change

11    of plea is contemplated.  Is that your understanding as

12    well?

13              MR. HEBLICH:  That's correct, Your Honor.

14              THE COURT:  If that's the case, let me ask if you

15    and the client would come and take a place at the podium,

16    please.

17              MR. HEBLICH:  Yes, sir.

18              THE COURT:  You are Mr. Nakia Keller?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  Mr. Keller, Mr. Heblich tells me that

21    he believes that you are considering changes of plea in your

22    criminal case from pleas of not guilty to various counts of

23    a criminal indictment outstanding to pleas of guilty to all

24    those same counts pursuant to an agreement with the United

25    States.  Is that true?  Are you considering a change of plea
```

1    in your case?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Mr. Keller, before the Court is in a

4    position to accept a change of plea from you, the Court has

5    to be satisfied that you understand about the consequences

6    of your decision; that you are fully aware of the nature and

7    the charges set forth in the various counts of this

8    indictment; that you understand about the elements of these

9    counts, that is, what the government would have to prove to

10   show that you were guilty of such conduct; that you

11   understand the penalties that attach to these various

12   charges; and, finally, that you are fully aware of all of

13   the constitutionally and related statutory rights that you

14   would waive, that you would give up, if you make pleas of

15   guilty.

16             In order to determine whether you have an adequate

17   understanding of these matters, I need to ask you a series

18   of questions here in a few moments.  I need to have you

19   answer those questions under oath.  Is that okay with you?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Let me ask you to raise your right

22   hand, face Ms. Moody, and be sworn.

23               NAKIA HEATH KELLER, DEFENDANT, SWORN

24             THE CLERK:  Thank you.

25             THE COURT:  Mr. Heblich, I wonder, have you and

```
 1   your client had an opportunity to receive a copy of the
 2   indictment in which he's named and to review that indictment
 3   thoroughly before we convened here this afternoon?
 4             MR. HEBLICH:  Yes, Your Honor.  I have the
 5   indictment here.  It has been reviewed thoroughly.
 6             THE COURT:  Let me ask, is there any desire on your
 7   part to have the indictment read in its entirety into the
 8   record at this point or would you prefer waiving a first
 9   formal reading?
10             MR. HEBLICH:  We would prefer waiving it.
11   Mr. Keller and I have discussed that.  And he agrees to
12   waive the reading of the indictment.
13             THE COURT:  Mr. Terrien, is there any desire on
14   your part to have the indictment read into the record?
15             MR. TERRIEN:  No, sir.
16             THE COURT:  I understand that actually we're
17   dealing with a second -- or maybe a first superseding
18   indictment this afternoon.  Perhaps the -- that indictment
19   did not carry -- a Rule 10 hearing was not conducted on that
20   indictment; is that your understanding as well?
21             MR. HEBLICH:  That's correct, Your Honor.
22   Mr. Keller is prepared to waive the Rule 10 hearing.
23             THE COURT:  There are no substantive changes
24   between the first version of the indictment and the second
25   in your case, are there?
```

1          THE CLERK:  It is a second superseding.

2          THE COURT:  Two charges --

3          MR. TERRIEN:  Your Honor, I just wanted to be clear

4    that the indictment we are going forward on today is the

5    second superseding indictment.  The distinction between the

6    first superseding indictment and the second was merely

7    clerical.

8          THE COURT:  So it is the second superseding

9    indictment to which Mr. Keller proposes to plead guilty.

10   And as I understand it, even though there was not a Rule 10

11   hearing conducted on that indictment, that you and the

12   client wish to waive the Rule 10 hearing in connection with

13   that document?

14         MR. HEBLICH:  That's correct, Your Honor.

15         THE COURT:  Okay.  Mr. Keller, as I say, I do have

16   a series of questions for you.  And I think that you'll find

17   that most of the questions are fairly basic, fairly simple.

18   On the other hand, if you don't understand a question or

19   want me to restate it or repeat it, that's fine.  Just let

20   me know.  We have got lots of time.  This is important.  It

21   has a profound impact on your life.  So we want to make sure

22   that we go over this set of questions as thoroughly as we

23   need to.

24         If you wish to consult with counsel as we go

25   through this colloquy, that's fine as well.  Just let me

```
 1   know.  And I'll arrange for you to meet with Mr. Heblich
 2   either here in the courtroom or perhaps in some more private
 3   setting.  Again, we have lots of time.  So there's no
 4   hurry.  Let me know if you have any questions or there's
 5   something that you don't understand.
 6            THE DEFENDANT:  Yes, sir.
 7            THE COURT:  First of all, let me ask, do you agree
 8   with Mr. Heblich that you and he have had an adequate
 9   opportunity to discuss the indictment that is now pending in
10   your case and to review it thoroughly before we convened
11   here today?
12            THE DEFENDANT:  Yes, sir, I agree with him.
13            THE COURT:  Then, to begin, let me ask you to state
14   for the record your full name.
15            THE DEFENDANT:  Nakia Heath Keller.
16            THE COURT:  What was your permanent address before
17   you were arrested, Mr. Keller?
18            THE DEFENDANT:  I was living in Fulks Run,
19   Virginia.
20            THE COURT:  Do you know how one would have reached
21   you by mail at that address?
22            MR. HEBLICH:  Street address?
23            THE DEFENDANT:  Oh, man, I don't remember it.
24            THE COURT:  If you don't know, that's fine.
25            THE DEFENDANT:  I don't remember what it is now.
```

```
 1              MR. HEBLICH:  We'll have that in a moment for you,
 2    Your Honor.
 3              THE COURT:  Okay.  If you don't know, Mr. Heblich,
 4    that's fine.
 5              MR. HEBLICH:  It is Hopkins Gap Road, Your Honor, I
 6    believe.  I don't remember the exact --
 7              THE DEFENDANT:  I don't remember the house number.
 8              THE COURT:  All right.  That's fine.
 9              What are the last four digits of your social
10    security number, Mr. Keller?
11              THE DEFENDANT:  7554.
12              THE COURT:  How old are you?
13              THE DEFENDANT:  I'm 37.
14              MR. TERRIEN:  What is your date of birth?
15              THE DEFENDANT:  5/24/75.
16              THE COURT:  How far have you gone in school?
17              THE DEFENDANT:  I completed high school.
18              THE COURT:  Do you have any additional vocational
19    training or expertise in any particular job area?
20              THE DEFENDANT:  I have studied for small engine
21    repair.  I was an electrician on the streets.
22              THE COURT:  Are you currently under the care of any
23    physician, any psychiatrist or psychologist, mental health
24    specialist or clinician for any emotional or mental problems
25    that might affect your judgment, impair your thinking, limit
```

```
 1    your communication skills or make it difficult for you to

 2    understand the nature of this prosecution?

 3              THE DEFENDANT:  No, sir.

 4              THE COURT:  Are you currently under the influence

 5    of any drugs, any intoxicants, alcohol, prescription

 6    medications, controlled substances?  Have you ingested any

 7    substance or preparation before coming here today that would

 8    affect your judgment, your cognition, your reasoning, your

 9    ability to participate and understand the nature of these

10    proceedings?

11              THE DEFENDANT:  No, sir, I'm not.

12              THE COURT:  Do you know why we are here today and

13    what we hope to accomplish?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Can you tell me in your own words what

16    you understand to be the purpose of this hearing?  Why have

17    we convened?

18              THE DEFENDANT:  Well, sir, I'm here to plead guilty

19    to the charges that I've committed.

20              THE COURT:  Yes, sir.  Yes, sir.

21              Mr. Heblich, I wonder, given your dealings with

22    this man, the opportunity that you have had to observe his

23    demeanor and consider his station, do you believe that he

24    possesses the capacity to make a voluntary, intelligent, and

25    informed decision about a change of plea this afternoon?
```

```
1            MR. HEBLICH:  Yes.  I think he's completely
2   competent and informed to make this decision.
3            THE COURT:  Mr. Keller, at this time I'm going to
4   ask Mr. Terrien or perhaps one of his associates to come
5   forward and to tell us first about the charges that are
6   pending by virtue of this second superseding indictment;
7   advise us as to the elements of each of the offenses stated
8   in the indictment; tell us about the penalties -- the
9   maximum penalties provided by law as to each of these
10  charges; and then I'm going to ask that he review with you
11  and with me the most important provisions of the plea
12  agreement, the contract that you have reached with the
13  government in your case.
14           Good afternoon, Mr. Terrien.
15           MR. TERRIEN:  Good afternoon, Your Honor.
16           Your Honor, to review the counts and the elements
17  of each to which Mr. Keller is pleading guilty to, they are
18  as follows:  First, Count One alleges a conspiracy to commit
19  interstate domestic violence.  That's in violation of 18
20  U.S.C. Section 371.
21           The elements are as follows:  first, that two or
22  more persons agreed to do something which violated federal
23  law, in particular, interstate domestic violence, which is a
24  violation of 18 U.S.C. Section 2261, as alleged in Count
25  Seven of the indictment; second, that the defendant knew of
```

1   the conspiracy and willfully joined it; and, third, that at

2   some time during the existence of the conspiracy one of the

3   members of the conspiracy knowingly performed one of the

4   overt acts charged in the indictment in order to accomplish

5   the object of the agreement or conspiracy.

6         Count Two, Your Honor, charges a conspiracy to

7   carry and use a firearm in relation to a crime of violence,

8   in violation of 18 U.S.C. Section 924(o).  The elements are

9   as follows:  first, that two or more persons agreed to use

10   or carry a firearm during and in relation to a crime of

11   violence which may be prosecuted in federal court, in

12   particular, the offenses alleged in Counts One, Three,

13   Seven, Nine, and Eleven of the indictment, which I'll get to

14   in just a moment; second, that the defendant knew of this

15   agreement or conspiracy; and, third, that the defendant

16   knowingly and voluntarily participated in or became a part

17   of this agreement or conspiracy.

18         Count Three, Your Honor, charges a conspiracy to

19   kill witnesses, in violation of 18 U.S.C. Section 1512

20   subsection K.  The elements are as follows:  first, that two

21   or more persons agreed to kill witnesses, in violation of 18

22   U.S.C. 512 (a)(1)(C); second, that the defendant knew of

23   this conspiracy or agreement; and, third, that the defendant

24   knowingly and voluntarily participated in or became a part

25   of this agreement or conspiracy.

1           Count Four, Your Honor, charges a conspiracy to

2    tamper with witnesses, in violation of 18 U.S.C. 1512(k).

3    The elements are as follows:  first, that two or more

4    persons agreed to tamper with witnesses in violation of 18

5    U.S.C. Section 1512(b)(2)(A) and 18 USC Section 1512(b)(3);

6    second, that the defendant knew of this agreement or

7    conspiracy; and, third, that the defendant knowingly and

8    voluntarily participated in or became a part of this

9    agreement or conspiracy.

10          Count Five, Your Honor, charges a conspiracy to

11   tamper with evidence, in violation, again, of 18 U.S.C.

12   Section 1512(k).  The elements are, first, that two or more

13   persons agreed to destroy or tamper with evidence, a

14   violation of 18 U.S.C. 1512(c)(1); second, that the

15   defendant knew of this conspiracy; and, third, the defendant

16   knowingly and voluntarily participated in or became a part

17   of the conspiracy.

18          Count Six, Your Honor, charges a conspiracy to use

19   fire to commit a felony offense, in violation of 18 U.S.C.

20   Section 844(m).  The elements are as follows:  first, that

21   two or more persons agreed to use fire to commit a felony,

22   in particular, to destroy or tamper with evidence, a

23   violation of 18 U.S.C. Section 1512(C)(1); second, that the

24   defendant knew of this conspiracy; and, third, the defendant

25   knowingly and voluntarily participated in the conspiracy.

```
 1              Count Seven, Your Honor, charges a violation of 18

 2   U.S.C. Section 2261(a)(1), which is interstate domestic

 3   violence.  The elements are that:  first, the defendant

 4   traveled in interstate -- excuse me, in interstate; second,

 5   the defendant did so with the intent to kill, injury,

 6   harass, or intimidate a spouse or intimate partner; and,

 7   third, that in the course of or as a result of such travel

 8   the defendant committed a crime of violence against that

 9   spouse or intimate partner; and, fourth, that the death of

10   the victim resulted.

11              Count Eight, Your Honor, alleges that the defendant

12   did carry and use a firearm in relation to a crime of

13   violence, in particular interstate domestic violence.  And

14   that is a violation of 18 U.S.C. Sections 924(c) and

15   924(j)(1).  The elements are:  first, the defendant used or

16   carried a firearm; second, that the defendant did so during

17   and in relation to a crime of violence which may be

18   prosecuted in federal court, in this particular instance,

19   interstate domestic violence as alleged in Count Seven; and,

20   third, the defendant caused the death of a person through

21   the use of a firearm.

22              Count Eight (sic), Your Honor, charges a violation

23   of 18 U.S.C. Section 1512(a)(1)(C).  The defendant did

24   murder a witness, in particular, Allaina Whetzel Taylor.

25   The elements are:  one, that the defendant killed another
```

person; two, the defendant did so with the intent to prevent

communication by any person to a law enforcement officer or

judge of the United States of information relating to the

commission or possible commission of a federal offense.

Count Ten, Your Honor, charges the use of a firearm

in relation to a crime of violence, in particular the murder

of witness Allaina Whetzel Taylor, in violation of 18 U.S.C.

Sections 924(c) and 924(j)(1).  The elements are:  one, the

defendant used or carried a firearm; two, the defendant did

so during and in relation to a crime of violence which may

be prosecuted in federal court, and, in particular, the

murder of witness Allaina Whetzel Taylor as alleged in Count

Nine; and, third, the defendant caused the death of a person

through the use of the firearm.

Moving to Count 13, Your Honor, which charges the

defendant with tampering with witnesses, a violation of 18

U.S.C. Section 1512(b)(3).  The elements are:  first, that

the defendant corruptly persuaded or attempted to corruptly

persuade another person; two, that the defendant did so with

the intent to hinder, delay, or prevent the communication to

a federal law enforcement officer of information relating to

the commission or possible commission of a federal offense;

and, third, the defendant -- that the defendant did so

knowingly.

Count 14, Your Honor, charges the defendant with

tampering with evidence, a violation of 18 U.S.C. Section

1512(c).  The elements are that, first, the defendant

altered, destroyed, mutilated, concealed, or attempted to

alter, destroy, mutilate, or conceal a record, document, or

other object; second, the defendant did so with the intent

to impair the object's integrity or availability for use in

an official proceeding; and, third, that the defendant did

so corruptly.

        Count 15, Your Honor, charges that the defendant

did use fire during the commission of a felony.  That's a

violation of 18 U.S.C. Section 844(h).  The elements are as

follows:  first, that the defendant used fire; and, second,

that the defendant did so to commit a felony which may be

prosecuted in federal court, in particular the destruction

of evidence as alleged in Count 14.

        Lastly, Your Honor, Count 16 charges the defendant

with being a felon in possession of a firearm, in violation

of 18 U.S.C. Section 922(g)(1).  The elements are as

follows:  first, that the defendant, having been convicted

in some court of a crime punishable by imprisonment for a

term exceeding one year; second, that the defendant

possessed a firearm or ammunition; third, that the firearm

or ammunition traveled in interstate or foreign commerce at

some point during its existence, and, fourth, that the

defendant did so knowingly.

1          Your Honor, those are the elements of the offenses

2   to which Mr. Keller is pleading guilty.  And I'll shift at

3   this time to summarize the plea agreement for the Court.

4          THE COURT:  That will be fine.

5          MR. TERRIEN:  Your Honor, I would note that this is

6   a plea agreement fashioned under Rule 11(c)(1)(C).  And

7   pursuant to the plea agreement, the defendant will plead

8   guilty to the charges I have just summarized, which, for the

9   record, are Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10, 13,

10  14, 15, and 16.

11         Your Honor, given that I have already summarized,

12  essentially, the general nature of each of these charges,

13  I'll simply summarize the punishment ranges for each of

14  them.

15         Your Honor, the maximum possible punishment for

16  Count 1 is a fine of up to $250,000 and a term of

17  imprisonment of up to five years plus a term of supervised

18  release.

19         For Count 2, Your Honor, the maximum statutory fine

20  is $250,000, a term of imprisonment of up to 20 years, plus

21  a term of supervised release.

22         For Count 3, the maximum statutory penalty is a

23  fine of up to $250,000 and a term of imprisonment up to

24  life, or death, plus a term of supervised release.

25         For Count 4, Your Honor, the maximum statutory

penalty, again, is a fine of up to $250,000 and a term of
imprisonment of up to 20 years, plus a term of supervised
release.

        For Count 5, Your Honor, the maximum statutory
penalty, again, is a fine of up to $250,000, a term of
imprisonment of up to 20 years, plus a term of supervised
release.

        For Count 6, the fine remains the same, the maximum
fine is the same, the term of imprisonment is up to 20
years, plus a term of supervised release.

        Count 6, the maximum statutory fine, again, is up
to $250,000, a term of imprisonment of up to 20 years, plus
a term of supervised release.

        For Count 7, Your Honor, the maximum statutory
penalty is a fine of up to $250,000 and a term of
imprisonment up to life, plus supervised release.

        For Count 8, the maximum fine, again, is the same
and the term of imprisonment of up to life, or death, plus a
term of supervised release.

        Moving on to Count 9, Your Honor, the maximum fine
is up to $250,000, and a term of imprisonment up to life, or
death, again, plus a term of supervised release.  There is a
mandatory minimum sentence of imprisonment for life.

        Count 10, Your Honor, the maximum statutory penalty
is a fine of up to $250,000, a term of imprisonment up to

1    life, or death, plus a term of supervised release.

2            Moving to Count 13, Your Honor, the maximum

3    statutory penalty is a fine of up to $250,000, and a term of

4    imprisonment of up to 20 years, plus a term of supervised

5    release.

6            For Count 14, Your Honor, the maximum fine is

7    $250,000, the term of imprisonment can be up to 20 years,

8    plus a term of supervised release.

9            Count 15, Your Honor, maximum statutory penalty is

10   a fine of $250,000, a term of imprisonment of up to ten

11   years, plus a term of supervised release.  There is a

12   mandatory minimum sentence of imprisonment of ten years that

13   must be served consecutively to any other term of

14   imprisonment.

15           Count 16, Your Honor, the maximum fine is $250,000,

16   the term of imprisonment is up to ten years, again, plus a

17   term of supervised release.

18           Moving on to page four of the plea agreement, Your

19   Honor, the defendant states that he is pleading guilty

20   because he is, in fact, guilty and because he believes it is

21   in his best interest to do so and not because of any threats

22   or promises.

23           He understands he is waiving valuable

24   constitutional rights as part of this plea hearing.  And

25   they are spelled out in detail in section two on page four.

1           As part of this agreement, the United States has

2     agreed to dismiss this defendant from the remaining counts

3     of the indictment at final disposition.

4           Moving on to page five, Your Honor, the United

5     States and the defendant have agreed that he will be

6     sentenced to the maximum term of imprisonment for each count

7     that he is pleading guilty to.

8           The parties have agreed that all other matters,

9     including, but not limited to, restitution, and fines are

10    left to the Court's discretion.

11          He understands that pursuant to Rule 11(c)(1)(C) of

12    the Federal Rules of Criminal Procedure the Court may either

13    accept or reject this plea agreement in its entirety.  He

14    understands that he will be allowed to withdraw his plea of

15    guilty if the Court rejects this plea agreement.

16          The defendant states as part of this agreement he

17    understands that he will spend the rest of his life in

18    prison and he will not be eligible for parole during any

19    term of imprisonment imposed.

20          Moving on to page seven of the agreement, the

21    defendant is waiving his right of direct appeal.  And that

22    is spelled out in detail in section C 1 at the bottom of

23    page seven.

24          On the top of page eight, the defendant has agreed

25    to waive his right to collaterally attack any order entered

1   by this Court and the sentence imposed.

2          As noted beginning on the bottom of page eight and

3   the top of page nine, the defendant has agreed to additional

4   obligations.  I will simply note the first one, that he

5   agrees not to commit any of the following, and, again, the

6   first one is that he will not attempt to withdraw his pleas

7   of guilty.

8          Moving on to page ten, Your Honor, halfway down the

9   page, the defendant notes his satisfaction with his

10  counsel.  Specifically, the defendant notes that he has

11  discussed the terms of the plea agreement and all matters

12  pertaining to the charges against him with his attorney and

13  he is fully satisfied with his attorney and his attorney's

14  advice.  At this time he has no dissatisfaction or complaint

15  with his attorney's representation.  And he agrees to make

16  known to the Court no later than at the time of sentencing

17  any dissatisfaction or complaint he may have with his

18  attorney's representation.

19         Moving on to page 11, Your Honor, at the top, the

20  defendant knowingly and willfully stipulates that there is a

21  sufficient factual basis to support each and every material

22  factual allegation contained in the charging document to

23  which he's pleading guilty.

24         Further down on page 11 the agreement notes that

25  this writing sets forth the entire understanding between the

1    parties and constitutes the complete agreement between the

2    United States Attorney for the Western District of Virginia

3    and the defendant, and no other additional terms or

4    agreements shall be entered, except and unless those other

5    terms and agreements are in writing, signed by the parties.

6           Your Honor, that agreement has been signed by the

7    parties and previously filed with the court.

8           THE COURT:  I wonder, Mr. Terrien, is there any

9    dispute or any assertion of restitution that may be due and

10   owing by this defendant?

11          MR. TERRIEN:  I do not believe that there will be,

12   Your Honor.

13          THE COURT:  Okay.  So that's a nonissue as far as

14   the government is concerned?

15          MR. TERRIEN:  I believe it is, Your Honor.

16          THE COURT:  Mr. Heblich, let me ask if you and

17   Mr. Keller will return to the podium.

18          Mr. Heblich, let me ask you first, do you agree

19   with counsel's statement of the elements of each of the

20   offenses to which Mr. Keller proposes to plead guilty?

21          MR. HEBLICH:  Yes.  I believe the government has

22   covered all of the elements of each count.

23          THE COURT:  Regarding Mr. Terrien's summary of the

24   plea agreement, then, do you feel that the summary that has

25   been given is complete and consistent with your

```
 1   understanding of the contract that Mr. Keller has made with
 2   the government in his case?
 3              MR. HEBLICH:  I believe that Mr. Terrien's summary
 4   completely covered all material points of the plea
 5   agreement, as I understand them and, I believe, as
 6   Mr. Keller understands them also.
 7              THE COURT:  Mr. Keller, is that your feeling as
 8   well?  Do you feel that Mr. Terrien's summary of the plea
 9   agreement was fair and comports with your understanding of
10   the bargain that you made with the government in your case?
11              THE DEFENDANT:  Yes, sir.
12              THE COURT:  I wonder, has anyone made any
13   additional promises to you, or given you any guarantees or
14   offered you any reason to believe that you might be treated
15   in a way other than what has been stated by Mr. Terrien in
16   summarizing the plea agreement?
17              THE DEFENDANT:  No, sir.
18              THE COURT:  No one has promised you any particular
19   outcome other than what he has said?
20              THE DEFENDANT:  No, sir.
21              THE COURT:  No one has promised you or told you you
22   would be treated in a more lenient fashion at some point
23   down the road?
24              THE DEFENDANT:  No, sir.
25              THE COURT:  Sir, has anyone tried to force you to
```

1  plead guilty or coerce you, compel you, twist your arm,

2  exert undue influence upon you, or cause you to make a plea

3  of guilty to these various counts of the indictment contrary

4  to what you believe to be your own best interest in the

5  facts and circumstances of the case?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Do you tell me that you propose to

8  plead guilty voluntarily and without undue influence or

9  coercion?

10          THE DEFENDANT:  Yes, sir, I do.

11          THE COURT:  You tell me that you propose to plead

12  guilty because you are, in fact, guilty of all of these

13  offenses which are summarized in the plea agreement and

14  because you think it is in your best interest to enter pleas

15  to these various counts?

16          THE DEFENDANT:  Can I ask --

17          THE COURT:  Sure.

18      (Off-the-record discussion between defendant and

19  defense counsel.)

20          MR. HEBLICH:  Your Honor, I believe the Court was

21  asking him whether he agrees to plead guilty because it is

22  in his best interests; is that right?

23          THE DEFENDANT:  Yes, sir.  I agree to plead guilty.

24          THE COURT:  Well, I don't know if I'm going to be

25  able to have that recitation, Mr. Heblich.

1    You tell me that you are, in fact, guilty of the

2    offenses to which you are going to be asked to plead at the

3    end of the day, the ones that have been summarized by

4    Mr. Terrien?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  Now, I wonder, Mr. Keller, one of the

7    things that Mr. Terrien said in his summation is that in the

8    plea agreement you have indicated, apparently, that you

9    intend to waive your right to appeal my judgment at some

10   later time about your sentence to a higher court, or, for

11   that matter, to appeal the decision that is made by the

12   Court in accepting pleas of guilty from you, or, more

13   generally, to appeal any issue to a higher court, save for

14   those very limited number of issues for which waiver of

15   appeal is not permitted?  Is that true?  Did you intend to

16   give up, in essence, your right to appeal the Court's

17   decision in the case and the outcome that has been described

18   to a higher court?

19        THE DEFENDANT:  Yes, sir, I have.

20        THE COURT:  Furthermore, the agreement would

21   indicate that you have said that you would give up your

22   right to collaterally attack the Court's judgment at some

23   later time, that is, to challenge the constitutionality of

24   the Court's judgment, the proprietary of the Court's

25   judgment through some collateral vehicle, such as a motion

```
 1   to vacate sentence, or a 2255, a petition of writ of habeas
 2   corpus, or a petition for writ of coram nobis, something of
 3   this sort.  Is that true?  Did you intend to give up your
 4   right to collaterally attack the Court's judgment at some
 5   later time save for any issue that cannot be waived or
 6   claims of ineffective assistance of counsel?
 7           THE DEFENDANT:  Yes, sir, I do.
 8           THE COURT:  Now, Mr. Keller, do you understand
 9   that, given the nature of the agreement between you and the
10   United States, specifically, that both you and the
11   government propose that you be allowed to plead under Rule
12   11(c)(1)(C) of the Federal Rules of Criminal Procedure, that
13   if the Court adopts the plea agreement at the end of the
14   day, that will be a case-dispositive event, but, on the
15   other hand, if the Court for whatever reason decides that it
16   is unable to accept the plea agreement in whole or in part,
17   that you would be allowed to plead anew, that is, we would
18   begin again in the process and you would be allowed to plead
19   separately and independently to each of the counts of the
20   indictment?
21           THE DEFENDANT:  Yes, sir.
22           THE COURT:  Do you understand that a Rule
23   11(c)(1)(C) plea is binding in terms of the recommendations
24   as to sentence?  If the Court agrees to go along with the
25   plea agreement, go along with the proposed pleas, that the
```

```
 1   Court would be required to sentence you in accordance with

 2   the plea agreement; and to the Court's understanding, that

 3   would mean that you would be given the maximum sentence as

 4   to each of the counts to which you would be pleading?

 5              THE DEFENDANT:  Yes, sir.

 6              THE COURT:  Now, do you understand that in

 7   determining whether to accept your plea agreement, in

 8   determining whether to go along with the outcome that you

 9   and the government are recommending to the Court, the Court

10   is required to consider the federal advisory sentencing

11   guidelines, the sentencing guidelines, and to really begin

12   consideration of the issues of sentencing based on the

13   guidelines?

14          Have you and Mr. Heblich talked about the advisory

15   sentencing guidelines, how they work and what they might

16   mean in your case?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  The application is limited in your

19   case, but the Court is required to compute the guideline

20   range for you, nonetheless, and to consider that guideline

21   range in making a decision as to whether to approve the plea

22   agreement.

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Do you understand that, based on your

25   own criminal history and the offense conduct on this
```

1    occasion, the guidelines will predict a sentencing range for

2    you that will give the Court some input, some starting point

3    in deciding whether to approve the plea agreement in your

4    case?

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  Do you understand that this guideline

7    range is merely advisory, and the Court might, in all

8    likelihood, make a decision about sentencing independent of

9    the guideline range computed for you?

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  Do you understand that in applying the

12   guidelines, to the extent that there are any disputed facts,

13   the Court will use a standard of preponderance of the

14   evidence to resolve those facts rather than the standard of

15   proof beyond a reasonable doubt that normally applies in

16   criminal cases?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  Do you understand that many of your

19   counts allege a conspiracy with other persons?  And if you

20   are convicted of a conspiracy count, in measuring your

21   culpability for purposes of the guidelines, the conduct of

22   coconspirators could be considered to the extent that that

23   conduct was foreseeable by you?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Mr. Heblich is someone who understands

1    about these sentencing guidelines.  He works with them

2    frequently.  It is part of what he does as a federal

3    defender.  And he may have come to you and said, "Nakia,

4    this is how I compute the guidelines in your case.  This is

5    the guideline range that I think the Court is going to be

6    asked to consider in determining whether to approve the plea

7    agreement."

8            Sir, do you understand that, as you stand here

9    today, no one knows exactly how the guidelines are going to

10   be computed in your case and it may very well be that at the

11   end of the day the guideline range that is said to apply to

12   you turns out to be very different from what Mr. Heblich or

13   Mr. Terrien or someone else may have told you you might

14   expect to receive?  You understand there are no guarantees

15   about how these guidelines are to be computed?

16           THE DEFENDANT:  Yes, sir, I do.

17           THE COURT:  But, once again, you understand that in

18   your case the guideline application is very limited and has

19   a very small practical effect.  The key decision that will

20   have to be made is whether the Court will approve the plea

21   agreement.

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Now, do you understand that under your

24   particular plea agreement, under your contract with the

25   government, the Court would impose a sentence that would not

1   permit parole?  Do you understand that if you plead guilty

2   and the Court approves your plea agreement and sentences you

3   in accordance with that agreement, you would not be eligible

4   for parole at any future time in your life?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  And you understand that if the Court

7   goes along with the plea agreement, you would receive a life

8   sentence?  You would never be released from prison at any

9   time in the future for any reason?

10          THE DEFENDANT:  Yes, sir, I do.

11          THE COURT:  Do you understand that under your plea

12  agreement, even though both Mr. Heblich and Mr. Terrien have

13  told me that it is not a viable issue, that it would be up

14  to the Court to decide about the matter of restitution, and,

15  for that matter, about what fines, if any, should be imposed

16  in your case?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Now, most importantly, Mr. Keller, I

19  need to make absolutely sure that you understand about the

20  very valuable constitutional and related statutory rights

21  that you would waive, that you would give up, if you make

22  pleas of guilty.

23          Now, as things stand today, as you appear before

24  the Court this afternoon, you stand there along with

25  counsel, you enjoy a presumption of innocence in this

1  criminal prosecution.  It is yours.  Given your status as a

2  person who has not been convicted, given your status as a

3  citizen of the United States, you are presumed innocent in

4  this criminal prosecution.

5          And that presumption of innocence is very

6  important, Mr. Keller.  It serves as a shield, a barrier, a

7  wall between you and the power and might of the United

8  States government.  It is a mountain that the government has

9  to climb and get over by proof beyond a reasonable doubt

10  should you go to trial in order to establish your guilt in

11  these matters.  It is a very powerful tool.  You own it.  It

12  is yours.  It stands to protect you.  Indeed, the

13  presumption of innocence, in and of itself, might be

14  sufficient for you to be acquitted in this case should you

15  go to trial, that is, found not guilty, without you putting

16  on any evidence or offering any defense to the matter

17  whatsoever.  It is a powerful constitutional weapon.  You

18  possess it.  You own it.  It is yours.

19          Sir, do you understand that as you stand here today

20  you are presumed innocent of any criminal wrongdoing in this

21  matter?

22          THE DEFENDANT:  Yes, sir, I do.

23          THE COURT:  And do you understand if you plead

24  guilty here in a few moments, you'll lose that presumption

25  of innocence, you waive it, it is gone forever, and it no

```
 1   longer stands to protect you?

 2             THE DEFENDANT:  Yes, sir.

 3             THE COURT:  Sir, do you understand that based upon

 4   your original pleas of not guilty that bring us here today

 5   your case has been set for trial?  It is on my trial

 6   calendar.  It has been on the calendar for some time.  And,

 7   indeed, should you change your mind this afternoon and

 8   decide that you want to plead not guilty and go to trial, so

 9   be it.  The Constitution guarantees you the right to a

10   speedy public trial.  That means that this matter can't be

11   held over your head indefinitely and can't be kept in the

12   lockup forever.  You are entitled to have the matter tried

13   and disposed of in a short order in a public venue, such as

14   this, so that your family and friends could come and make

15   sure you are dealt with fairly.

16             Sir, do you understand that if you persist in pleas

17   of not guilty, the Constitution and laws of our nation

18   guarantee you the right to a speedy public trial?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And do you understand that if you plead

21   guilty, you would give up this right?  There would be no

22   trial, speedy or otherwise.  And we would simply set your

23   case down for sentencing in a few weeks' time?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Mr. Keller, if you change your mind and
```

```
 1   decide that you want to plead not guilty and go to trial --
 2   and, by the way, if you did change your mind, it wouldn't
 3   make me mad.  I would not be upset with you, neither would
 4   Mr. Heblich, neither would Mr. Terrien and his associate.
 5   We all want you, as officers of the court, to do what you
 6   think is best for you.  And if that means pleading not
 7   guilty and going to trial, putting aside this plea
 8   agreement, putting the matter forward to a trier of fact,
 9   you would be entitled at that trial to a trial by jury.
10          That means that 12 of your peers, 12 members of the
11   common community, would be called upon to sit in judgment as
12   to the facts of your case.  And only unless and until all 12
13   of those jurors, each and every one of them, decided that
14   you were guilty beyond a reasonable doubt could any judgment
15   of conviction be entered and any sentence imposed.
16          Sir, do you understand that if you change your mind
17   this afternoon, reject this plea agreement, go forward to
18   trial, no one will be angry at you, we won't be mad, and at
19   your trial you will be entitled to a trial by jury and a
20   unanimous jury verdict of guilty beyond a reasonable doubt
21   before you could be punished in this case?
22          THE DEFENDANT:  Yes, sir.
23          THE COURT:  You understand if you plead guilty here
24   in a few moments, you give up, once and for all, the right
25   to put the factual issues in this matter before a jury and
```

1   for the jury's consideration of your guilt or innocence

2   beyond a reasonable doubt?

3           THE DEFENDANT:  Yes, sir, I do.

4           THE COURT:  Okay.  Do you understand, Mr. Keller,

5   that if you plead not guilty and go to trial, at your trial

6   the Constitution guarantees you the right to confront and

7   cross-examine all adverse witnesses, that means that as a

8   general rule no hearsay testimony could be admitted at your

9   trial against you, and, for your part, you would be entitled

10  to call upon the United States Marshal to subpoena witnesses

11  to be at your trial to help you testify and to help you

12  present your side of the story if you chose to put on a

13  defense?

14          Sir, do you understand that if you persist in not

15  guilty pleas and go to trial, the Constitution guarantees

16  you the right to confront adverse witnesses and to compel

17  the attendance of witnesses potentially favorable to you?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  And do you understand if you plead

20  guilty, you would be giving up these twin rights to

21  compulsory attendance and confrontation of witnesses?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Now, as we said a moment ago,

24  Mr. Keller, if you persist in pleas of not guilty and go to

25  trial, you would continue to enjoy this presumption of

```
 1    innocence that I spoke of.  That means that at your trial
 2    you wouldn't have to say anything.  You could sit at counsel
 3    table, not say a word.  Mr. Heblich wouldn't have to say a
 4    word.  You could let the government try to prove your guilt
 5    to these criminal charges beyond a reasonable doubt without
 6    your participation.  On the other hand, at your trial you
 7    would be considered a competent witness on your own behalf.
 8    You might waive the right to remain silent, be sworn,
 9    testify, offer testimony from witness.  And in that event
10    your testimony and that of your witnesses would be
11    considered under the same credibility standards as would
12    testimony from officers of the government.
13           Sir, do you understand that if you persist in pleas
14    of not guilty and go to trial, you would have the right to
15    remain silent or the opportunity to waive that Fifth
16    Amendment guarantee and to offer evidence, your testimony
17    and that of others, in your defense?
18           THE DEFENDANT:  Yes, sir.
19           THE COURT:  And you understand if you plead guilty,
20    you would give up these rights, you would no longer have the
21    right to remain silent, you could be required to be sworn
22    and offer testimony about the circumstances that underlie
23    these charges, and should you be called upon to testify, you
24    would be charged to answer truthfully to all questions put
25    to you?
```

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Mr. Keller, I know that Mr. Heblich and

3    his associates have helped you decide what to do.  He has

4    helped you understand these charges.  He has investigated

5    the facts and conducted discovery.  He has helped you

6    understand what these statutes mean and how they apply to

7    you.  He has helped you understand your predicament and the

8    options that are available to you.  He has listened to you

9    tell him your side of the story.  And he has counseled you

10   and helped you decide what course you want to pursue.  In

11   all likelihood, he has helped negotiate this plea agreement

12   with the government.  And he may have come to you and said,

13   "Nakia, I think that this plea agreement is what we need to

14   do in your case.  I recommend that you take the government's

15   offer."

16           But, Mr. Keller, you are going to be the one

17   spending life in prison if you go along with this plea

18   agreement, if you accept this deal, not Mr. Heblich.  And I

19   guarantee that, even at this point in time, if you change

20   your mind, he will stand behind that decision and he will

21   work to his utmost ability at your trial to see that you are

22   not convicted and, if possible, that you are acquitted of

23   any wrongdoing.  He will be your advocate.

24           Sir, do you understand that if you persist in pleas

25   of not guilty and go to trial, the Sixth Amendment of our

 1   Constitution guarantees you the right to the assistance of

 2   competent counsel such as Fred Heblich or some other

 3   attorney just as good?

 4           THE DEFENDANT:  Yes, sir.

 5           THE COURT:  And do you understand that if you plead

 6   guilty you would, in effect, lose the biggest portion of

 7   this Sixth Amendment right, there would be no trial,

 8   Mr. Heblich would have no need to litigate on your behalf,

 9   though he would be present and represent you at the time of

10   sentencing?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Now, Mr. Keller, a moment ago, as we

13   said, you indicated that you wanted to waive your right to

14   appeal the Court's judgment in all key respects, save for

15   those very limited issues for which waiver of appeal is not

16   permitted.  But, on the other hand, if you exercise your

17   constitutional right to go forward to trial, should you

18   lose, even if you are convicted, in that event you could

19   appeal every issue to a higher court, the United States

20   Court of Appeals, and have that higher court review all of

21   the rulings that are made here, both at the pretrial and the

22   trial level, to determine whether or not your conviction was

23   constitutionally obtained.

24           Sir, do you understand that if you plead not guilty

25   and go to trial, even if you lose, you would have the right

1    to appeal that judgment to a higher court?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And do you understand that under your

4    particular plea agreement, should you plead guilty and have

5    that plea accepted and have your plea agreement accepted,

6    you would, in effect, waive your right to appeal almost all

7    of the issues in your case save for those very limited

8    number of issues for which waiver of appeal could not be

9    accepted?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Do you understand, sir, that if you

12   plead guilty there will be no trial, you will have waived

13   the right to trial as well as to all of these other

14   constitutional rights that I have tried to summarize for

15   you?

16             THE DEFENDANT:  Yes, sir, I do.

17             THE COURT:  Mr. Keller, understanding all of these

18   things as you tell me that you do, understanding about these

19   very valuable constitutional rights that you propose to

20   waive, to give up once and for all by virtue of the pleas of

21   guilty, understanding about the provision of your plea

22   agreement in which it is indicated that there will be no

23   parole in your case, you are really waiving all right, by

24   virtue of this plea agreement, if accepted, to be considered

25   for parole, and, indeed, some of the charges would close

that thing in any event; understanding about the advisory
sentencing guidelines, how the Court will at least consider
your guideline range and determine whether to approve the
plea agreement; understanding about that plea agreement, how
it is a case-dispositive agreement and understanding that if
the Court accepts the agreement that you are going to be
bound by all of the provisions, as will the Court, in
determining what sentence you shall receive; understanding
about the charges in your case, very serious charges set
forth in a number of different counts; understanding about
the elements of these offenses; and understanding that if
convicted of these charges pursuant to the plea agreement,
you would be serving life in prison without the possibility
of parole; understanding all of these things, Mr. Keller, do
you tell me that you still wish to consider pleading guilty
to these charges pursuant to the plea agreement?

             THE DEFENDANT:  Yes, sir.

             THE COURT:  Are you absolutely sure?

             THE DEFENDANT:  Yes, sir.

             THE COURT:  You understand the very dire
consequences that will follow if your plea agreement is
accepted?

             THE DEFENDANT:  Yes, sir.

             THE COURT:  And you have talked about it with your
family; you have talked about it with Mr. Heblich; this is

```
 1   what you want to do?
 2              THE DEFENDANT:  Yes, sir.
 3              THE COURT:  There's no doubt in your mind?
 4              THE DEFENDANT:  Yes, sir.
 5              THE COURT:  There's no doubt in your mind?
 6              THE DEFENDANT:  No, sir.
 7              THE COURT:  If that is your decision, Mr. Keller,
 8   I'd have you tell me now in your own words what did you do
 9   that makes you feel that you are guilty of these offenses?
10   Why do you propose to plead guilty to these charges this
11   afternoon?
12              THE DEFENDANT:  Well, sir, I agreed to plead guilty
13   as an aider and abettor to these charges because this is
14   what I have done.  I mean, there's nothing else to it but
15   that.
16              THE COURT:  All right.  Well, pretend like I don't
17   know what was done and you explain it to me.
18              THE DEFENDANT:  I helped my codefendant kill three
19   people.
20              THE COURT:  How did you go about that?  What
21   happened exactly?
22              THE DEFENDANT:  I helped her plan it out.  I
23   distracted the individuals so she could do the deed.  I also
24   helped her buy the gun as well.
25              THE COURT:  And did you do so with the
```

```
1    understanding that it was likely that these individuals
2    would be murdered?
3              THE DEFENDANT:  Yes, sir.
4              THE COURT:  At some point did you attempt to
5    -- well, tell me about how you tampered with a witness.
6              THE DEFENDANT:  Tampered with a what?
7              THE COURT:  Witness.
8              THE DEFENDANT:  Oh.  Well, sir, we asked the
9    witnesses to come up with alibis so that we could cover our
10   trail.  Of course, I destroyed evidence as well.
11             THE COURT:  All right.  Tell me about the
12   destruction of the evidence.
13             THE DEFENDANT:  I set the house on fire.  The
14   weapon that was used, I cut it up with a saw and got rid of
15   it.  I disposed of clothing and everything else.
16             THE COURT:  In committing these offenses, did you
17   employ a firearm?
18             THE DEFENDANT:  Yes, sir.
19             THE COURT:  Did you travel across a state line in
20   order to finalize the commission of these offenses?
21             THE DEFENDANT:  Yes, sir.  We drove from Virginia
22   to West Virginia.
23             THE COURT:  And in traveling across state lines, in
24   carrying the firearm and determining to kill witnesses and
25   tampering with the witnesses and tampering with the evidence
```

```
 1    and in use of a fire to commit a felony, all of that was

 2    done in collusion with someone else, pursuant to an

 3    agreement with another person?

 4              THE DEFENDANT:  Yes, sir.

 5              THE COURT:  And in committing these acts, did you

 6    do so with the notion and understanding that your

 7    codefendant's spouse was a potential victim of your intended

 8    crime?

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Do you agree that, either as a

11    principal or an aider and abettor, Lori Keller's former

12    spouse was killed under circumstances best described as

13    murder, meaning the killing was malicious and committed with

14    premeditation?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Either as a principal or aider and

17    abettor, do you admit that a witness was killed with the

18    intent to prevent that witness from communicating to federal

19    law enforcement officers information relating to commission

20    of a federal crime?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  Who was the witness?

23              THE DEFENDANT:  Allaina Whetzel.

24              THE COURT:  Was that witness murdered through use

25    of a firearm?
```

```
1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Mr. Terrien, would you agree that the

3   defendant's response has covered all of the elements of the

4   offenses to which he proposes to plead guilty?

5            MR. TERRIEN:  Your Honor, I believe the only

6   element that the Court has not covered is that he is a

7   convicted felon.

8            THE COURT:  Thank you.

9            MR. TERRIEN:  Yes, sir.

10           THE COURT:  As to the use of a firearm by a

11  convicted felon charge, Mr. Keller, do you admit that you

12  were previously convicted of a felony under the laws of the

13  United States or under the laws of one of the various states

14  of the union at some earlier time?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Now, tell me again, when you left to go

17  to the place where these acts were committed, where did you

18  leave from?

19           THE DEFENDANT:  I left from Fulks Run, Virginia.

20           THE COURT:  And where did you end up?

21           THE DEFENDANT:  In Hardy County, West Virginia, at

22  the victim's residence.

23           THE COURT:  Anything else, Mr. Terrien?

24           MR. TERRIEN:  No, sir.

25           THE COURT:  Mr. Heblich, any of the elements that
```

```
 1    you feel have not been adequately covered by the defendant's
 2    response?
 3              MR. HEBLICH:  I think they have all been covered,
 4    Your Honor.
 5              THE COURT:  All right.  Then at this time I'm going
 6    to ask you two gentlemen to have a seat for a moment.  We'll
 7    call upon the United States for a proffer of the evidence as
 8    to what the government believes could have been proven had
 9    the matter gone forward to trial.
10              You may proceed by way of evidence or a proffer,
11    Mr. Terrien, however you prefer.
12              MR. TERRIEN:  Your Honor, the United States is
13    going to proceed by way of an oral proffer.
14              THE COURT:  That will be fine.
15              Is that satisfactory, Mr. Heblich?
16              MR. HEBLICH:  That's fine, Your Honor.
17              MR. TERRIEN:  Your Honor, Lori Ann Taylor Keller,
18    who at the time of these offenses was known as Lori Taylor,
19    and Dennis Taylor, who went by Dennis, or "Chip," lived
20    together as man and wife in Rockingham County, Virginia,
21    from on or about July 4th, 1994, until sometime in October
22    of 2007.
23              Over the course of their 14-year marriage, Lori and
24    Dennis Taylor had three children together.  This marriage
25    ended when a final divorce decree for Lori Taylor and Dennis
```

```
 1    was entered on April 9th of 2009.

 2              As the acrimonious divorce and custody pleadings

 3    between Lori and Dennis Taylor evolved, Lori Taylor and

 4    Nakia Keller began openly discussing their desire to kill

 5    Dennis.  Sometime in the spring of 2009 Lori Taylor and

 6    Nakia Keller discussed various means of killing Dennis.  In

 7    the course of those discussions, Nakia Keller wrote down two

 8    plans to kill Dennis and/or Allaina, Allaina Whetzel.

 9              Plan one, Your Honor, was for Lori Taylor and Nakia

10    Taylor to wait for Dennis at his residence and,

11    quote/unquote, grab him, make him drive to a place where

12    they could kill him, kill him, and then, quote, cut off

13    fingers and dispose of teeth and burn him, end quote.  They

14    would also burn his truck to a, quote/unquote, crisp, and

15    then drive home in their own car.

16              Plan two was simply to go to Dennis and Allaina's

17    residence, quote, and kill them both while the kids are in

18    school, end quote.  On the back side of the plan was a list

19    of things they needed to execute the plan, including, quote,

20    full-body suits, gasoline, firearm, cutters to cut off

21    fingers, something to cut teeth out, pliers, new clothes,

22    zip ties to bound Chip, end quote, and good alibi

23    witnesses.  They also agreed that they would kill any

24    witnesses to their crimes in order to evade apprehension.

25              On April 18, 2009, Lori Taylor and Nakia Keller
```

purchased a Jennings 9mm pistol in Virginia, the firearm
they would later use to murder Dennis, Allaina, and
Allaina's five-year-old daughter from a previous marriage,
Kaylee Whetzel.

Later, on August 31st, 2009, Lori Taylor and Nakia
Keller visited Nakia Keller's parents' residence.  While
there, Nakia Keller instructed Lori Taylor how to fire the
Jennings 9mm pistol and they engaged in target practice.
Nakia Keller was convicted of felony offenses in 2003.
Therefore, he was not thereafter legally permitted to
possess a firearm.

Ultimately, on October 23rd, 2009, Lori Taylor and
Nakia Keller carried out their long-discussed plan to murder
Dennis and leave no witnesses, leading them to also murder
Allaina and Kaylee.  It was on that day that Lori Taylor and
Nakia Keller drove from Virginia to Dennis and Allaina's
residence in West Virginia.  Lori Taylor and Nakia Keller
entered the residence and used the 9mm pistol they had
purchased to shoot and kill Dennis, Allaina, and Kaylee.

After they had killed all three victims, Lori
Taylor and Nakia Keller undertook a number of actions
designed to conceal their involvement in the murders.
First, Nakia Keller and Lori Taylor set fire to Dennis and
Allaina's residence in an attempt to destroy and conceal
evidence of the crimes they had committed.  They also

discarded along the roadside unspent bullets, magazines, and other items -- by "magazines," Your Honor, I mean a firearm magazine -- and other items connected to the murders.

Nakia Keller used an electric saw to cut the murder weapon, the Jennings 9mm pistol, into several smaller pieces for the purpose of concealing and discarding it. They also discarded, in an outhouse, clothing worn during the commission of the murders and pieces of the murder weapon.

Lori Taylor and Nakia Keller also attempted to fabricate a false alibi. Specifically, Nakia Keller and Lori Taylor instructed her three children that if anyone asked where Lori Taylor and Nakia Keller had been that night, the children were to lie and say that Lori Taylor and Nakia Keller had been at home the whole evening.

In the evening on October 23rd, 2009, Hardy County sheriff's deputies responded to a report of a house fire at Dennis and Allaina's residence. When they arrived at Dennis and Allaina's residence, they found the residence in flames. The fire department also responded to the scene. After the fire was extinguished, the firefighters found the remains of Dennis, Allaina, and Kaylee at the bottom of the basement stairwell.

In the early morning hours on October 24th, 2009, the Hardy County coroner arrived at the scene of the fire and pronounced all three victims deceased at the scene and

1   removed the bodies.  Later on October 24th, 2009, the chief

2   medical examiner determined that the cause of death for each

3   of the victims was gunshot wounds.

4           The offenses, Your Honor, which I have described

5   occurred within the Western District of Virginia and

6   elsewhere.  It certainly does not encompass all of the facts

7   surrounding this case, nor its investigation, but it is

8   sufficient, Your Honor, I believe, to cover the elements of

9   the offenses.

10          THE COURT:  Thank you, Mr. Terrien.

11          Mr. Heblich, let me ask if you and the client would

12  come back to the podium.

13          Mr. Heblich, let me ask you, do you believe that

14  the proffer that has been given by Mr. Terrien on behalf of

15  the United States is an accurate statement of what might

16  have been adduced by the government by way of evidence if

17  the case had gone to trial?

18          MR. HEBLICH:  Your Honor, I would say two things.

19  One is, is that I believe that that would be the

20  government's evidence if we went to trial.  The second thing

21  I would like to say is that, as the Court heard in its

22  colloquy with Mr. Keller, that to the extent there's some

23  different version of events as to who did exactly what, that

24  what he has told you that he conspired, he -- for many of

25  the counts, he conspired, he aided and abetted, and there

```
 1    are a number of counts where he, in fact, did exactly what
 2    he is -- he did set the fires; he did destroy the evidence;
 3    he did those things.  And they certainly were the acts of
 4    someone who is a principal rather than an aider and abettor.
 5               I understand that the government's statement of
 6    facts is stylized as "they."  And our interpretation of that
 7    is that it is including both defendants either as principals
 8    or aiders and abettor without making distinctions between
 9    them.
10               He's signing up for five life sentences.  And he
11    certainly is swallowing a big pill.  His concern is that --
12    he admits his guilt.  He doesn't want to take response -- he
13    doesn't want to admit to facts that he doesn't think that
14    are true.  And -- but he certainly admits to sufficient
15    facts to justify the pleas that he's making.
16               THE COURT:  All right.  Well, regardless of how it
17    is styled, would you agree that the government's proffer is
18    sufficient to forecast evidence that would establish
19    Mr. Keller's guilt under each of the counts to which he
20    proposes to plead?
21               MR. HEBLICH:  Yes, indeed.
22               THE COURT:  And you would agree that that forecast
23    of evidence is consistent with the facts of the case and
24    consistent with what Mr. Keller intends to admit if he does
25    make pleas of guilty to all of these counts?
```

1          MR. HEBLICH:  Yes, sir.

2          THE COURT:  Mr. Keller, with that explanation made

3   on your behalf through counsel, do you agree with the

4   government's proffer?  In other words, do you feel the

5   government could have adduced evidence as outlined by

6   Mr. Terrien just a moment ago had the case gone forward?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And you would agree that the evidence

9   forecast in Mr. Terrien's proffer would be sufficient to

10  establish your guilt under each of the counts to which you

11  propose to plead?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Now, more generally, Mr. Heblich, let

14  me ask you, understanding the facts of this case as you have

15  indicated just a moment ago, based on your review of the

16  records, the evidence that has been collected by the

17  government, amassed in its investigation of this unfortunate

18  incident, based on your conversations with the client and

19  what he has told you about his conduct, given what I know is

20  your very thorough review of all of these statutes pursuant

21  to which he has been charged and the decisional law that

22  helps us understand what they mean and how far they reach,

23  given your many years of experience in representing folks in

24  federal court and state court in circumstances not too

25  dissimilar from these that present themselves today and

 1  given your many years of advising people and helping them

 2  understand about their predicament and the options that are

 3  available to them, based on your work on behalf of your

 4  client in helping to negotiate this plea agreement and the

 5  various provisions that make up this proposal to the Court,

 6  considering the totality of your services in this man's

 7  case, do you believe that his proposed plea of guilty

 8  pursuant to this plea agreement is well advised?

 9       MR. HEBLICH:  I do, Your Honor.  I certainly think

10  it is well advised.

11       THE COURT:  Mr. Keller, from your part, are you

12  satisfied with Fred Heblich's services and, for that matter,

13  the attorneys who have helped Mr. Heblich during the defense

14  of your case, his understanding of the evidence, his ability

15  as an advocate to ferret out the information the government

16  has collected against you, which I know has been freely

17  shared in these circumstances, his willingness to speak with

18  you and have you tell him your side of the story, his

19  understanding of these statutes pursuant to which you have

20  been charged and the decisions of other courts that help us

21  understand what they mean, and, more to the point, his

22  ability to communicate this to you and help you understand

23  about the statutory framework under which you have been

24  charged with these very serious offenses, his experience,

25  his expertise, the level of confidence that you have in him

```
 1   as an advocate and as a representative, his ability and
 2   willingness to act as your agent negotiating this plea
 3   agreement, and, especially to the point, his capacity to
 4   help you understand your options and the predicament in
 5   which you find yourself and the responses that are available
 6   to you under the law, sir, are you satisfied with all
 7   elements of Mr. Heblich's services in your case?
 8              THE DEFENDANT:  Yes, sir, very satisfied.
 9              THE COURT:  Is there anything that you want to tell
10   me about the representation that you have received that I
11   need to know about before we move forward?
12              THE DEFENDANT:  No, sir.
13              THE COURT:  Now, Mr. Keller, I don't have to tell
14   you that this is -- this is the biggest day that you'll ever
15   experience.  Here you are in a federal court proposing to
16   plead guilty to a multitude of charges with the
17   understanding that the Court is going to sentence you to
18   life in prison without the possibility of parole, that you
19   are going to stand convicted of offenses that were morally
20   wrong and would be a heavy weight for anyone to bear.  This
21   day will mark the turning around of your life and the
22   beginning of a new chapter, and a very unfortunate chapter;
23   that it is a very, very important decision that you are
24   called upon to make today.  And before I call upon you to
25   tell me -- make a final and binding decision about your
```

```
 1   pleas in this case, I want to know, do you have any
 2   questions of me about the things that I have tried to
 3   explain to you, especially about your constitutional rights
 4   or about your standing under this plea agreement, or any
 5   -- any questions that you want to put to Mr. Heblich about
 6   things that I may have said or things that he may have told
 7   you about earlier?  Is there anything that you would ask
 8   either one of us about any aspect of this case that you need
 9   to have answered before I call upon you to make final and
10   binding pleas in your criminal case?
11            THE DEFENDANT:  No, sir.  I think both of you have
12   done a wonderful job.
13            THE COURT:  Mr. Heblich, is there any desire at
14   this time that we read the counts of the indictment in
15   totality or is it sufficient that the Court merely summarize
16   those counts as we go through the --
17            MR. HEBLICH:  Your Honor, we'll waive the reading.
18   There's no need --
19            THE COURT:  Do you wish to plead collectively, when
20   it comes time to do so, to all of the charges?
21            MR. HEBLICH:  I'm sorry, Your Honor?
22            THE COURT:  Do you wish to plead collectively to
23   the charges?
24            MR. HEBLICH:  Yes.
25            THE COURT:  Then I'm going to review very quickly
```

1   with you, Mr. Keller, the charges to which the Court would

2   have you plead in just a moment.  When I call upon you to

3   plead, it will be with the understanding that the Court is

4   going to review the presentence report that is done

5   following pleas, and if those -- if your plea agreement is

6   accepted, you'll be bound by your pleas of guilty; that will

7   be the dispositive event in your case.  If the plea

8   agreement is not accepted, you will be entitled at that time

9   to plead anew.

10          So, with that understanding, sir, in just a moment

11  I'm going to ask you how you plead to the following

12  charges:  conspiracy to commit interstate domestic violence,

13  18 U.S.C. Section 371; conspiracy to carry and use a firearm

14  in furtherance of a crime of violence, 18 U.S.C. Section

15  924(o); conspiracy to kill witnesses, 18 U.S.C. Section

16  1512(k); conspiracy to tamper with witnesses, 18 U.S.C.

17  Section 1512(k); conspiracy to tamper with evidence, 18

18  U.S.C. Section 1512(k); conspiracy to use a firearm to

19  commit a felony --

20          MR. HEBLICH:  Fire, Your Honor.

21          THE COURT:  I'm sorry.  Fire.  Thank you.

22          Conspiracy to use fire to commit a felony, 18

23  U.S.C. Section 844(m); interstate domestic violence, 18

24  U.S.C. Sections 2261 and 2; use of a firearm during and in

25  relation to a crime of interstate domestic violence, in

violation of 18 U.S.C. Sections 924(c) and (j) and 2; murder

of a witness, in violation of 18 U.S.C. Sections

151(a)(1)(C) and 2; use of a firearm in relation to a crime

of violence, 18 U.S.C. Sections 924(c) and (j) and 2;

witness tampering, 18 U.S.C. Sections 1512(b)(3) and 2;

evidence tampering, 18 U.S.C. Sections 1512(c) and 2; use of

fire during the commission of a felony, 18 U.S.C. Sections

844(h) and 2; felon in possession of a firearm, 18 U.S.C.

Section 922(g)(1).

Sir, I ask you, how do you plead at this time to

the charges as just summarized by the Court?

THE DEFENDANT:  I plead guilty, sir.

THE COURT:  Mr. Keller, it is the Court's belief

and finding that you are fully competent and entering an

informed plea, that you are aware of the nature of the

charges and the consequences of your pleas, and that your

pleas of guilty are knowing and voluntary pleas supported by

an independent basis in fact as to each of the essential

elements of your offense.  Your plea is accepted and you are

now provisionally judged guilty of each of the offenses

charged in the indictment.

At this time, Mr. Heblich, I'm going to ask if you

and Mr. Keller would come forward to Ms. Moody's desk.  She

has in her hand a memorandum of guilty plea form.  I would

ask that you gentlemen read the form.  And if you believe

1    that it correctly summarizes what has happened here today, I

2    would ask that both of you sign that form on the bottom of

3    the page.

4        (Form executed.)

5            THE COURT:  You gentlemen may have a seat.

6            The record will reflect that Mr. Keller has signed

7    the form, after reading it, all in open court in the

8    presence of his attorney, Fred Heblich.

9            Mr. Keller, it is now necessary that we refer your

10   case to the probation office for the preparation of a

11   presentence report.  That report is very important in your

12   case because the Court will consider the report in

13   determining whether to approve the plea agreement.  The

14   Court will also use the report in helping to understand how

15   the advisory sentencing guidelines apply in your case.  And

16   that will further inform the Court as to whether the plea

17   agreement should be approved.  So it is important.  And you

18   will want to cooperate with the probation officer as he or

19   she gathers the information necessary for the report.

20           Once the report is complete, why, you'll be able to

21   read it.  Mr. Heblich will see to that.  And you can let the

22   probation officer know if there are minor corrections to

23   make:  words that are misspelled, dates that are wrong,

24   names, perhaps, that need to be changed.  On the other hand,

25   if you or counsel have any formal objections to make as to

```
 1    the contents of the presentence report, your objections must
 2    be made in writing within 14 days of the date you receive
 3    the report.
 4            Then, once the report is in its final form, we'll
 5    have you back here.  I think we'll get a pretty quick
 6    turnaround in your case.  We'll have a sentencing hearing
 7    and we'll decide whether or not to approve the plea
 8    agreement and to impose the sentence that you and the
 9    government have agreed to.
10            Ms. Moody, do we have a date and time in mind for
11    sentencing for Mr. Keller?
12            THE CLERK:  We have not spoken.  I believe the
13    government would like to have it in Harrisonburg.  And the
14    courtroom is available there August 30th, 31st, September
15    6th.
16            MR. HEBLICH:  Morning?
17            THE CLERK:  I'm letting other opposing
18    -- codefendant counsel check too.  All day is available for
19    us.
20            MR. HEBLICH:  Those dates are available.
21            THE CLERK:  Are you saying they are okay?
22            MR. ELDRIDGE:  Yes.
23            THE COURT:  Mr. Terrien?
24            MR. TERRIEN:  Yes, sir.
25            THE CLERK:  Thursday, September 6th, 9:30 a.m.
```

```
 1              THE COURT:  Okay.  Okay.
 2              Mr. Terrien, under the category of victim
 3    statements, I believe that the government had a matter to
 4    present to the Court at this time.
 5              MR. TERRIEN:  Yes, Your Honor.
 6              One of the members of the victim's family would
 7    like to exercise his right to speak here today.  He is
 8    Kaylee Whetzel's grandfather.  His name is Dale Whetzel.  If
 9    he could come forward?
10              THE COURT:  That will be fine.  Come forward, sir.
11              MR. TERRIEN:  Podium, Your Honor?
12              THE COURT:  Sir, do you want to be sworn and
13    testify or do you just wish to make a general statement?
14              MR. WHETZEL:  I'm just going to make a general
15    statement, I guess.
16              THE COURT:  Do you want to stand there or do you
17    want to be seated here in the witness box?  Whichever you
18    prefer.
19              MR. WHETZEL:  I can stand right here.
20              THE COURT:  That will be fine.
21              MR. WHETZEL:  Honorable Judge Conrad, my name is
22    Dale Whetzel.  And I'm the grandfather of Kaylee Grace
23    Whetzel.  And today we are here with Kaylee's father,
24    grandmother, and her loving family.
25              And, Your Honor, we are here today not to seek
```

revenge, but we are here to seek justice for the cruel and
cold-hearted death of Kaylee Grace Whetzel.

Under the United States Declaration of Independence
we are entitled to certain unalienable rights given to us by
our creator: life, liberty, and the pursuit of happiness.
By committing this horrific crime, the defendant has chosen
to forfeit those rights. But he did not have the right to
take these of the defendant. He took these rights from
three people, one of those being only a five-year-old
child. Because of hate and because of anger he decided to
take justice into his own hands. Because of his anger and
total disregard for the lives of other human beings by the
defendant, Kaylee Grace Whetzel will never have the
opportunity to experience or enjoy any of these God-given
rights.

Kaylee Grace was a daughter and granddaughter, a
niece, a cousin, and a friend of so many little children and
so many other people in our community. Kaylee Grace was
only five years old and still had a full life before her.

After reading the papers, I'm led to wonder
sometimes if this crime had political ties or had
involvement of a celebrity or an athlete or if this crime
got more media attention would we be here today at a plea
hearing or would we be going to trial for these acts of
cruelty.

1            I believe there are some criminal acts so terrible,

2     such as this one, that justice cannot be served through a

3     plea agreement.  How can we bargain and put a price tag on

4     the life of a precious five-year-old child?  It is not just

5     the murder, Your Honor, but it was a premeditated cold-

6     blooded execution of a vulnerable, innocent little girl.  To

7     murder an innocent five-year-old child and then to attempt

8     to cover his crime, the horror is unthinkable.  And a life

9     sentence could never satisfy the punishment God has granted

10    to the defendant.

11            On the day of October 23rd, 2009, Nakia Keller was

12    jury, judge, and executioner.  This is the worst crime that

13    anyone could ever commit against another human being.

14            Our family has been to about all of the hearings

15    thus far and we have yet to see the defendant on any

16    occasion show any signs of emotion, guilt, or remorse for

17    these crimes.

18            It is not just a crime against the government, but

19    it is a crime against a little five-year-old child.  It is a

20    crime against God, humanity, and a family that loved Kaylee

21    Grace more than words could ever express.

22            The defendant has denied the responsibility for

23    taking the life of Kaylee Grace Whetzel.  How can there ever

24    be justice for Kaylee Grace and the family of Kaylee Grace

25    Whetzel?  We will never know the truth of what happened that

horrible day.  And we will constantly be haunted by the

suffering that Kaylee Grace experienced by the actions and

by the hand of the defendant on that day.

Your Honor, the father and family of Kaylee Grace

Whetzel have been sentenced to a life sentence by the

defendant.  We will never have the enjoyment of watching

Kaylee Grace grow up.  And our son and family will always

carry the grief and loneliness of not having Kaylee Grace in

our lives.

Your Honor, I consider myself to be a God-fearing

person and I believe God's word to be both truth and

justice.  In Exodus 20:7, the Seventh Commandment, God said,

"Thou shall not kill."  In Genesis 9:56, "And for your

lifeblood I will surely demand an accounting.  I will demand

an accounting from every animal.  And from each human being,

too, I will demand an accounting for the life of another

human being.  'Whoever sheds human blood, by humans shall

their blood be shed; for in the image of God has God made

mankind.'"

In Exodus 21, 12 through 14, "Anyone who strikes a

person with a fatal blow is to be put to death.  However, if

it is not done intentionally, but God lets it happen, they

are to flee to a place I will designate.  But if anyone

schemes and kills someone deliberately, that person is to be

taken from my altar and put to death."

1          Leviticus 24:17-21, if anyone takes the life of a

2     human being, he must be put to death.  "Whoever kills an

3     animal must make restitution, but whoever kills a man must

4     be put to death."

5          Romans 13:1-5, "Let everyone be subject of the

6     governing authority, for there is no authority except that

7     which God has established.  The authorities that exist have

8     been established by God.  Consequently, whoever rebels

9     against the authority is rebelling against what God has

10    instituted, and those who do so will bring judgment on

11    themselves.  For rulers hold no terror for those who do

12    right, but for those who do wrong.  Do you want to be free

13    from fear of the one in authority?  Then do what is right

14    and you will be commended.  For the one in authority is

15    God's servant for your good.  But if you do wrong, be

16    afraid, for rulers do not bear the sword for no reason.

17    They are God's servants, agents of wrath to bring judgment

18    on the wrongdoer.  Therefore, it is necessary to submit to

19    the authorities, not only because of possible punishment but

20    also as a matter of conscience."

21          Your Honor, these are just a few of God's commands

22    as why the punishment of this heinous cold-blooded crime

23    could be nothing less than what Our Lord has commanded.

24          Your Honor, we just thank you and the Court for

25    this time.  Thank you.

```
 1              THE COURT:  Am I to take it from your comments that
 2     you believe that the Court should reject the plea agreement
 3     and require the government to prosecute the case as a death
 4     case?
 5              MR. WHETZEL:  Do I?  Yes.
 6              THE COURT:  Is that what you are urging?  Is that
 7     the effect of your --
 8              MR. WHETZEL:  Yes.
 9              THE COURT:  And you understand that the decision
10     about the plea agreement won't be made today; it will be
11     made down the road when we have the second proceeding?
12              MR. WHETZEL:  Okay.
13              THE COURT:  I invite you to appear and offer
14     comments at those times as well.
15              MR. WHETZEL:  Okay.  Thank you.
16              THE COURT:  Thank you, sir, for those heartfelt
17     words.
18              Is there anything else that needs to be done in
19     Mr. Keller's case at this time?
20              MR. TERRIEN:  Nothing by the United States, Your
21     Honor.
22              MR. HEBLICH:  No, Your Honor.
23              THE COURT:  All right.  Let's take about a five-
24     minute recess and we'll have the next case.
25          (Thereupon, these proceedings were adjourned at
```

1    2:35 p.m.)

2

3

4

5

6

7

8

9

10        I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12
          ____/s/ Carol Jacobs____          October 26, 2012
13        Official Court Reporter                 Date

14

15

16

17

18

19

20

21

22

23

24

25