**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 5:10-cr-00015** |
| | ) | |
| **NAKIA KELLER,** | ) | |
| **Respondent.** | ) | |
| | ) | |

**UNITED STATES' MOTION TO DISMISS
PETITIONER'S MOTION TO VACATE**

The defendant has filed a habeas petition under 28 U.S.C. § 2255, arguing that certain of his convictions should be dismissed in light of the Supreme Court's decision in *Davis v. United States*, 139 S.Ct. 2319 (2019) and *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018). As Fourth Circuit case law demonstrates, the *Davis* and *Dimaya* decisions do not affect Keller's convictions in Counts 1, 2, 7, 8, and 10, all of which are either predicated on crimes of violence, which remain valid under the force clause, or are simply not affected by the *Davis* and *Dimaya* rulings. Moreover, the defendant cannot prove actual innocence, or cause and prejudice, for any error and has procedurally defaulted his claims. Keller's motion should be dismissed.

**Factual and Procedural Background**

On August 3, 2011, a federal grand jury returned a sixteen-count Second Superseding Indictment against Petitioner Nakia Heath Keller and a co-conspirator, charging him with Conspiracy to Committee Interstate Domestic Violence (Count 1), in violation of 18 U.S.C. § 371; Conspiracy to Carry and Use a Firearm in Relation to a Crime of Violence as contained in Counts 1, 3, 7, 9, and 11 (Count 2), in violation of 18 U.S.C. § 924(o); Conspiracy to Kill Witnesses (Count 3) in violation of 18 U.S.C. § 1512(k); Conspiracy to Tamper with Witnesses (Count 4), in violation of 18 U.S.C. § 1512(k); Conspiracy to Tamper with Evidence (Count 5), in violation of

18 U.S.C. § 1512(k); Conspiracy to Use a Fire to Commit a Felony (Count 6), in violation of 18 U.S.C. § 844(m); Interstate Domestic Violence (Count 7), in violation of 18 U.S.C. § 2261(a)(1); Carry and Use of a Firearm in Relation to a Crime of Violence – Interstate Domestic Violence (Count 8), in violation of 18 U.S.C. §§ 924(c) and 924(j)(1); Murdering a Witness (Count 9), in violation of 18 U.S.C. § 1512(a)(1)(C); Use of a Firearm in Relation to a Crime of Violence – Murder of a Witness (Count 10), in violation of 18 U.S.C. §§ 924(c) and 924(j)(1); Murder of a Witness (Count 11), in violation of 18 U.S.C. § 1512(a)(1)(C); Use of a Firearm in Relation to a Crime of Violence – Murder of Witness (Count 12), in violation of 18 U.S.C. §§ 924(c) and 924(j)(1); Tamper with Witness (Count 13), in violation of 18 U.S.C. § 1512(b)(3); Tamper with Evidence (Count 14), in violation of 18 U.S.C. § 1512(c); Use of Fire During the Commission of a Felony (Count 15), in violation of 18 U.S.C. § 844(h); and Felon in Possession (Count 16), in violation of 18 U.S.C. § 922(g)(1). Sec. Super. Ind., ECF No. 107. The grand jury also made special findings against Keller, including that Keller intended lethal force in the death of another and that he intentionally and specifically engaged in an act of violence when committing certain listed crimes. *Id.* at 16-19.

The charges stem from the murders of Dennis Taylor, Allaina Whetzel Taylor, and Kaylee Whetzel, who was 5 years old at the time of her death. Presentence Investigation Report ("PSR"), ECF No. 258, at ¶¶ 6-8. Keller and his co-conspirator memorialized, in writing, the plot to kill Taylor and others, and had openly planned and discussed the murder over a period of months. *Id.*, at ¶ 6. In committing the murder, Keller and his co-conspirator entered the Taylor residence, shot its three occupants, and then set the residence on fire. *Id.*, at ¶¶ 8-9. Keller also took multiple steps to conceal the murders from law enforcement. *Id.*, at ¶ 8.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Keller entered into a written plea agreement with the United States in which he agreed to plead guilty to all counts, except Counts 11 and 12; waive certain constitutional rights; and to be sentenced to life imprisonment, among other conditions. Plea Agmt, ECF No. 147. As part of that plea agreement, Keller waived his right to appeal and to collaterally attack his sentence, except for any claims of ineffective assistance of counsel:

> I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel. I agree and understand that if I file any court document (except for an appeal based on an issue no otherwise waived in this agreement; an appeal based on an issue that cannot be waived by law; or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any way, any order imposed in my case, such action shall constitute a failure to comply with a provision of this agreement.

*Id.* at 8. In return, the United States agreed to dismiss Counts 11 and 12, which related to the murder of Kaylee Whetzel. *Id.* at 2. On June 25, 2012, Keller pled guilty before the Honorable Glen Conrad. Minute Entry, ECF No. 272. The Court sentenced Keller to three consecutive life sentences plus 120 months' incarceration, as follows:

| Count 1 | Conspiracy to Commit Interstate Domestic Violence | 60 months' incarceration, concurrent |
| Count 2 | Conspiracy to Carry and Use a Firearm in Relation to a Crime of Violence | 240 months' incarceration, concurrent |
| Count 3 | Conspiracy to Kill Witnesses | Life imprisonment, concurrent |
| Count 4 | Conspiracy to Witness Tamper | 240 months' incarceration, concurrent |
| Count 5 | Conspiracy to Tamper with Evidence | 240 months' incarceration, concurrent |
| Count 6 | Conspiracy to Use a Fire to Commit a Felony | 240 months' incarceration, concurrent |
| Count 7 | Interstate Domestic Violence | Life imprisonment, concurrent |
| Count 8 | Carry and Use a Firearm in Relation to a Crime of Violence – Interstate Domestic Violence | Life imprisonment, consecutive |
| Count 9 | Murdering a Witness (Allaina Whetzel Taylor) | Life imprisonment, concurrent |

| Count 10 | Use of a Firearm in Relation to a Crime of Violence – Murder of Allaina Whetzel Taylor | Life imprisonment, consecutive |
|---|---|---|
| Count 13 | Tampering with Witnesses | 240 months' incarceration, concurrent |
| Count 14 | Tampering with Evidence | 240 months' incarceration, concurrent |
| Count 15 | Use of Fire During Commission of a Felony | 120 months' incarceration, consecutive |
| Count 16 | Felon in Possession of a Firearm | 120 months' incarceration, concurrent |

Judgment, ECF No. 256. The Court also ordered 3 years' supervised release on Counts 1, 2, 4, 5, 13, 14, 15, and 16, and 5 years' supervised release on Counts 3, 7, 8, 9, and 10, all to run concurrently; restitution of $11,521.59; and court fees of $1,400. *Id.*, at 4, 6; *see also* Transcript of Sentencing Hearing dated Sept. 6, 2012 (ECF No. 274), at pp. 31-32.

Despite the terms of the plea agreement, Keller appealed his sentence to the United States Court of Appeals for the Fourth Circuit. On May 30, 2013, the Fourth Circuit held that Keller's Rule 11 plea hearing was knowing and voluntary, affirmed his convictions, and dismissed his remaining claims. Mem. Op., ECF No. 277.

On July 24, 2013, the defendant filed his first petition for relief pursuant to 28 U.S.C. § 2255, asserting numerous and varied claims, including but not limited to ineffective assistance of counsel. Pet., ECF No. 282. Keller moved for and was granted permission to add additional claims, making a total of fifty-three claims for relief. *See* Mem. Op., ECF No. 319, at 33; Pet., ECF Nos. 302, 303, 304, 305, 308, 310, 311. In a lengthy opinion, the Court dismissed Keller's motion on November 14, 2014, in part because several of the claims were barred by the waiver contained in the plea agreement. Mem. Op., ECF No. 319. Keller also filed a motion to alter or amend his judgment under Rule 59(e) of the Federal Rules of Civil Procedure, reasserting the same claims, which the Court again denied on March 20, 2015. Mot., ECF Nos. 321, 325; Mem. Op., ECF No. 326. Keller appealed both decisions to the Fourth Circuit, which denied a certificate of appealability and dismissed his appeal on September 15, 2015. Mem. Op., ECF No. 342.

Keller filed a second motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255; the Court rejected the motion as successive and lacking certification from the Fourth Circuit on April 13, 2017. Mem. Op., ECF No. 354.

Keller now brings a third amended motion pursuant to 28 U.S.C. § 2255,[1] arguing that his convictions for Conspiracy to Commit Interstate Domestic Violence (Count 1), Conspiracy to Use a Firearm in Relation to a Crime of Violence (Count 2), Interstate Domestic Violence (Count 7), Carry and Use of a Firearm in Relation to a Crime of Violence – Interstate Domestic Violence (Count 8), and Use of a Firearm in Relation to a Murder (Count 10) must be vacated after the U.S. Supreme Court's decisions in *United States v. Davis*, 139 S.Ct. 2319 (2019) and *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018) (herein, "Motion"). Mot., ECF No. 429. The Fourth Circuit has authorized the successive motion. Order, ECF No. 388.

## Argument

For the reasons stated below, the Court should dismiss the habeas petition.

### I.      Keller has validly waived these claims in his plea agreement.

In his written plea agreement with the United States, Keller waived his right to collaterally attack his sentence. Such a waiver will be enforced if the record shows that the waiver is valid and the challenged issues are all within the scope of the waiver. *E.g., United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005). The Fourth Circuit has held that a waiver of appellate and collateral attack rights is valid as long as the waiver is knowing and voluntarily made. *United States v.*

---

[1]     Specifically, on June 24, 2020, Keller filed a third motion to vacate his conviction, challenging Counts 2, 8, and 10. ECF Nos. 375, 391. The Fourth Circuit authorized the successive motion on April 21, 2021. ECF No. 388. This Court ordered briefing on May 13, 2021. ECF Nos. 390, 392. On July 6, 2021, Keller moved to amend his third 2255 motion to add challenges to Counts 1 and 7, which the United States opposed. ECF Nos. 398, 404, 420. The Court granted Keller's motion to amend his petition on December 3, 2021, which has resulted in the current third, amended 2255 petition. ECF No. 422, 429.

*Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused" during the plea colloquy. *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992). Generally, if a district court fully questions the defendant during the Rule 11 hearing regarding his waiver of appellate and collateral attack rights, the waiver is both valid and enforceable. *See United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005); *United States v. Wessells*, 936 F.2d 165, 167-68 (4th Cir. 1991). The Fourth Circuit has emphasized that "a defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004).

Keller has repeatedly demonstrated that he knowingly and voluntarily waived his right to collaterally attack his sentence. Keller pleaded guilty pursuant to a written plea agreement, wherein he waived his right to collaterally attack his conviction and sentence. Plea Agmt., ECF No. 147 at 8. At his plea hearing on June 25, 2012, the Assistant United States Attorney explained the terms of the plea agreement, including the collateral attack waiver. Plea Hr'g Tr., ECF No. 272 at 18-19. When questioned by the Court, Keller indicated that this was accurate. *Id.* at 21. The Court also directly discussed with Keller both his appellate and collateral attack rights; Keller affirmed he understood. *Id.* at 23-24, 26. In fact, two courts have now held that Keller's plea was knowing and voluntary, including the Fourth Circuit. Mem. Op., ECF No. 277; Mem. Op., ECF No. 319, at 14. And this Court has previously upheld the plea agreement's waiver provision. Mem. Op., ECF No. 319.

Because Keller's plea was knowing and voluntary, his waiver of his right to collaterally attack his plea is valid,[2] and Keller's motion should be dismissed.

## II.      Keller's cannot succeed substantively on his claims and his convictions still stand.

Even if Keller did not waive his asserted claims, each challenged conviction is still valid as each 924(c) and 924(j) predicate remain crimes of violence post-*Davis*.  In *United States v. Davis*, 139 S.Ct. 2319 (2019), the Supreme Court invalidated as unconstitutionally vague the residual clause of 18 U.S.C. § 924(c)'s definition of "crime of violence."  After *Davis*, a predicate offense qualifies as a "crime of violence" only if it qualifies as a crime of violence under the force (or elements) clause, that it "has as an element the use, attempted use, or threatened use or physical force against the person or property of another," under 18 U.S.C. § 924(c)(3)(A).  *Davis* was a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court.  *In re Thomas*, 988 F.3d 783, 788 (4th Cir. 2021).  Thus, even on collateral review, a defendant's Section 924(c) conviction remains valid only if it relies on a predicate offense which is a crime of violence under the force clause. *United States v. Thompson*, No. 19-7586, 2021 WL 4521111, at *1 (4th Cir. 2021) (unpublished).

To determine when an offense qualifies as a crime of violence under the force clause, the court applies the categorical or modified categorical approach. *United States v. Bryant*, 949 F.3d 168, 172 (4th Cir. 2020). Where a "predicate statute 'sets out a single (or 'indivisible') set of elements to define a single crime," the categorical approach is used. *Id.* (quoting *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016). The Fourth Circuit has explained the categorical approach as follows:

---

[2]    None of Keller's claims fall into the narrow class of claims that the Fourth Circuit has determined to be excluded from any waiver provisions. *See, e.g., Lemaster*, 403 F.3d at 220.

Under this approach, we focus on "the *elements* of the prior offense rather than the *conduct* underlying the conviction," *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013), and ask whether those elements "necessarily require the use, attempted use, or threatened use of physical force," *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019). If the "minimum conduct necessary" to sustain a conviction under the predicate statute does not require the use, attempted use, or threatened use of force, *see Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015), then the offense "is not 'categorically' a crime of violence under the force clause." *Walker*, 934 F.3d at 378 (quoting *Simms*, 914 F.3d at 233). In undertaking this inquiry, however, we must ensure that there is a "realistic probability," rather than a "theoretical possibility," that the minimum conduct would actually be punished under the statute. *Moncrieffe v. Holder*, 569 U.S. 184, 191, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)).

The "modified" categorical approach is simply "a tool for implementing the categorical approach." *Descamps*, 570 U.S. at 262, 133 S.Ct. 2276; *see also Mathis*, 136 S. Ct. at 2249 (describing modified categorical approach as aid for determining "what crime, with what elements, a defendant was convicted of"). We apply this approach in the " 'narrow range of cases' " involving a "divisible" statute. *Descamps*, 570 U.S. at 261, 133 S.Ct. 2276 (quoting *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)).

A divisible statute is one that lists "potential offense *elements* in the alternative," and thus includes "multiple, alternative versions of the crime." *Id.* at 260, 262, 133 S.Ct. 2276 (emphasis added). A statute that merely lists alternative means of committing a crime is not divisible. *Mathis*, 136 S. Ct. at 2249; *see also Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) ("[A] crime is divisible under *Descamps* only if it is defined to include multiple alternative *elements* (thus creating multiple versions of a crime), as opposed to multiple alternative *means* (of committing the same crime). Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." (citations and internal quotation marks omitted)).

If a court determines that the underlying statute is divisible, and that application of the modified categorical approach is therefore appropriate, then it may examine a limited set of documents, such as "the indictment, jury instructions, or plea agreement and colloquy," *Mathis*, 136 S. Ct. at 2249, for the sole purpose of determining "which of the statute's alternative elements formed the basis of the defendant's prior conviction," *Descamps*, 570 U.S. at 262, 133 S.Ct. 2276. And once a court has isolated the specific crime of conviction, it must apply the traditional categorical approach outlined above to determine whether that crime

constitutes a "crime of violence" under § 924(c)'s force clause. *See Mathis*, 136 S.
Ct. at 2249, 2256; *cf. Mathis*, 932 F.3d at 265 & n.23.

*United States v. Bryant*, 949 F.3d 168, 172–73 (4th Cir. 2020). Applying either the categorial or

the modified categorical approach, Keller's convictions remain valid.

### a. Premeditated murder is a crime of violence.

The *Davis* decision did not affect the defendant's conviction under Count 10, in which he

was convicted for using a firearm in relation to the murder of a witness, in violation of 18 U.S.C.

§ 924(j).[3] The underlying crime of violence for this count – as stated in the indictment – is murder

in violation of 18 U.S.C. § 1111. *See* Sec. Sup. Ind., ECF No. 107, at 8-9. Post-*Davis*, murder

remains a crime of violence because it qualifies as such under the elements/force clause of Section

924(c), which remains valid law.

Section 1111(a) defines murder as "the unlawful killing of a human being with malice

aforethought." 18 U.S.C. § 1111(a). The statute further provides as follows:

> Every murder perpetrated by poison, lying in wait, or any other kind of willful,
> deliberate, malicious, and premeditated killing; or committed in the perpetration of,
> or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage,
> sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or
> robbery; or perpetrated as part of a pattern or practice of assault or torture against a
> child or children; or perpetrated from a premeditated design unlawfully and
> maliciously to effect the death of any human being other than him who is killed, is
> murder in the first degree.

*Id.* The Fourth Circuit addressed the question of whether Section 1111(a) murder is a crime of

violence on April 20, 2022. *United States v. Jackson*, 32 F.4th 278 (4th Cir. 2022). The Court

found that Section 1111(a) is divisible, setting forth four types of first-degree murder,[4] and thus

---

[3] Subsection 924(j) provides that "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm shall [be punished]."

[4] The four types of murder are defined in the phrases within § 1111(a) separated by semi-colons. 32 F.4th at *8-9.

the modified categorical approach applies. *Id.* at *10. If the defendant was charged and convicted by a jury of premeditated murder, his conviction is a crime of violence as it "necessary requires the use of '*violent* force—that is, force capable of causing physical pain or injury to another person.'" *Id.* (emphasis in original) (citation omitted).

*Jackson* resolves the issue here. Keller was indicted in Count 10 with carrying and using a firearm to commit a premeditated murder—the first clause of Section 1111(a). ECF No. 107 at 9-10. Count Ten describes the crime of violence committed as follows:

> killing a witness, as set forth in Count 9 of this indictment which is realleged and incorporated by reference herein . . . and in this course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111, in that the defendants, with malice aforethought, did unlawfully kill Allaina Whetzel Taylor by shooting her with a firearm willfully, deliberately, maliciously, and *with premeditation*.

*Id.* at 10 (emphasis added). Count 9 similarly alleges only a premeditated murder committed with malice aforethought. *Id.* at 9. No other clause of Section 1111(a) is even alleged.[5] Thus, it is clear that Keller was indicted for, and pled guilty to, premeditated murder, which remains a crime of violence post-*Davis*.

The same conclusion is correct if the Court analyzes Count 10 under the witness tampering murder statute charged in Count 9. In a prosecution of Section 1512(a)(1)(C), the "government must prove (1) a killing or attempted killing, (2) committed with a particular intent, namely, an intent (a) to 'prevent' a 'communication' (b) about 'the commission or possible commission of a Federal offense' (c) to a federal 'law enforcement officer or judge.'" *Fowler v. United States*, 563

---

[5] *Jackson* did not address the question of whether the second clause, which sets forth felony murder, is a crime of violence. 32 F.4th 278, at *10.

U.S. 668, 672 (2011); *see also United States v. Ramos-Cruz*, 667 F.3d 487, 494 (4th Cir. 2012). The Fourth Circuit has explicitly held that this statute -- Section 1512(a)(1)(C) which is contained in Count 9 -- is a crime of violence under the force clause. *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019) (upholding § 924 conviction; "[F]ederal witness tampering by murder also requires the unlawful killing of another, which may be accomplished by force exerted either directly or indirectly").[6]

This Fourth Circuit determination – that premeditated murder is a crime of violence under the force clause – remains valid law after the *Davis* decision, since that opinion did not affect the force clause. Keller instead asks the Court to adopt the Ninth Circuit's reasoning in *United States v. Begay*, 934 F.3d 1033, 1040 (9th Cir. 2019), in which the Ninth Circuit held that second degree murder is not a crime of violence, because the statute could include reckless conduct and not just intentional conduct, which is required for an offense to be considered a crime of violence. *Contra United States v. Smith*, 957 F.3d 590, 595 (5th Cir. 2020) (rejecting § 2255 motion based on *Davis* and holding that attempted murder was a crime of violence under the force clause); *Thompson v. United States*, 924 F.3d 11553, 1155 (11th Cir. 2019) (holding that second-degree murder convictions were crimes of violence under elements/force clause because it require a "level of force . . . capable of causing physical pain or injury"). But here, the grand jury did not indict – and Keller is not convicted of – use of a firearm to commit second degree murder. In contrast to the defendant in *Begay*, Keller was charged with using the firearm to commit murder "willfully, deliberately, maliciously, and with premeditation." Sec. Sup. Ind., ECF No. 107, at 9. By statute, "willful, deliberate, malicious, and premeditated killing" is first-degree murder, and hence *Begay*

---

[6] Like the defendants in *Mathis*, here Keller was also charged and convicted of murder – not attempted murder – of witnesses, making an analysis of the divisible statute under the modified categorical approach unnecessary. *See Mathis*, 923 F.3d at 265 n. 21; Sec. Sup. Ind., ECF No. 107.

does not apply. *See* 18 U.S.C. § 1111(a). The recent decision in *Jackson* settles this claim. The Supreme Court's *Davis* decision does not affect Count 10 in this case, and the Court should deny Keller's motion.

**b.  Interstate Domestic Violence Resulting in Death is a crime of violence.**

Defendant also contends that his other Section 924(j) conviction should also be vacated on similar grounds. In Count 8, Keller pled guilty and was convicted for carrying and using a firearm in relation to premeditated murder. As discussed above, the charged predicate crime is premeditated murder, which remains a crime of violence post-*Davis*, and thus Count 8 is valid. *See* Sec. Sup. Ind., ECF No. 107, at 7 ("…and in the course of this violation caused the death of a person through the use of firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111").

Count 8 also remains valid if the Court defines the predicate crime as Count 7, which is incorporated by reference into Count 8 and is Interstate Domestic Violence Resulting in Death, in violation of 18 U.S.C. §§ 2261(a)(1) and 2261(b)(1). Sec. Sup. Ind., ECF No. 107, at 7. Interstate Domestic Violence Resulting in Death is also a crime of violence, and hence Counts 7 and 8 are still a valid convictions after *Davis*.

Pursuant to Section 2261(a)(1) anyone who (1) "travels in interstate or foreign commerce or enters or leaves Indian country or is present within the special maritime and territorial jurisdiction of the United States," (2) with the intent to kill, injure, harass, or intimidate," (3) "a spouse, intimate partner, or dating partner," and who, (4) "in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner" commits a crime. Section 2261(b)(1) adds the additional element of "death of the victim results."

The Fourth Circuit has held that this statute is divisible and has applied the modified categorical approach. *See United States v. Faulls*, 821 F.3d 502, 514–15 (4th Cir. 2016). Examining a limited set of underlying documents, it is clear that "the intent to kill" "resulted in the death" of the victim was the charged element, which requires the application of force. For example, the Second Superseding Indictment charges the defendant "with the intent to kill . . . resulted in the death of Dennis Taylor" for Count 7 and that Keller used a firearm to commit premeditated murder in Count 8. ECF No. 107. *See also* Presentence Investigation Report, ECF No. 258, ¶¶ 6-8 (noting that Keller and co-defendant had two plans, both of which contemplated killing victims, and did, in fact, kill multiple victims).

Section 2261(a) is also a crime of violence when analyzed under the categorical approach. While several portions of the text of § 2261(a) contemplate alternatives, in terms of distinguishing between elements and means, the alternatives are properly construed as means or methods of satisfying a single element, rather than alternate elements. *See, e.g., United States v. Jacobs*, No. 20-5761, 2021 WL 5014093, *3-4 (6th Cir. Oct. 28, 2021) (finding statute indivisible and applying categorical approach). Focusing on the second element, the government agrees that neither "harassment" nor "intimidation" by themselves require "force capable of causing physical pain or injury to another person." *See Johnson v. United States*, 559 U.S. 133, 140 (2010). But that is not the end of the analysis. The argument that the inclusion of harassment and intimidation as means of committing the second element is fatal to the crime of violence question ignores the inclusion of the fourth element of Section 2261(a), which requires an attempted or committed "*crime of violence* against that spouse, intimate partner, or dating partner." 18 U.S.C. § 2261(a) (emphasis added). Because the fourth element of Section 2261(a) itself requires a further predicate crime of violence, a Section 2261 conviction must have, as an element, a crime of violence that contains,

as an element, the use, attempted use, or threatened use of physical force, and the Fourth Circuit has previously explained that "a crime that requires the commission of a crime of violence in every case must necessarily itself be a crime of violence." *United States v. Kearney*, 837 F. App'x 975, 979 (4th Cir. 2020); *see also Owens v. United States*, No. 2:15-CR-00055-NT, 2020 WL 5735127, at *6 (D. Me. Sept. 24, 2020) ("Because the fourth element of § 2261(a) itself requires a further predicate crime of violence '[t]he only conclusion that can be reached is that a § 2261 conviction must also have, as an element, a crime of violence that contains, as an element, the use, attempted use, or threatened use of physical force: the exact definition also required under § 924(c)(3)(A).'") (citation omitted).

Moreover, in this case, there is a fifth element that necessarily requires the use of force: the death of the victim. *See* Sec. Sup. Ind., ECF No. 107, at 7 (charging Interstate Domestic Violence Resulting in Death). It is impossible to commit a crime resulting in death without that offense categorically requiring the use of force. *See In re Irby*, 858 F.3d at 234 ("one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another"); *Mathis*, 932 F.3d at 265 (holding that Virginia's first-degree murder statute, Va. Code § 18.2-32, which mirrors the federal murder statute, categorically meets the requirements of the force clause); *Burrage v. United States*, 571 U.S. 204, 214 (2014) ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (holding that the "death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a Section 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest); *United States v. Lucas*, 836 Fed.Appx. 142, 148-18 (4th Cir. 2020), *cert. denied*, No. 20-7679, 2021 WL 1951984 (U.S. May 17, 2021). And here, where Count 8 clearly defines the

resulting death as being a premeditated murder, there is no question but the defendant was charged and convicted of a murder offense necessarily involving the use of force. *Jackson*, 32 F.4th 278 at *10.

Because Section 2261(a) is a crime of violence, the related Section 924(j) conviction is also valid. *See Kearney*, 837 F. App'x at 979; *see also Barnette v. United States*, No. 3:12-CV-327, 2021 WL 949848, at *21 (W.D.N.C. Mar. 12, 2021) (holding that § 2261(a) is a crime of violence and related § 924(c) conviction also valid). Keller's petition as to Counts 7 and 8 should be denied.

### c. *Davis* does not prohibit convictions for conspiracy to commit crimes of violence.

The *Davis* opinion also does not invalidate Keller's conviction for Conspiracy to Carry and Use a Firearm in Relation to a Crime of Violence in Count 2, in violation of 18 U.S.C. § 924(o). Section 924(o) provides:

> A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life.

Thus, Section 924(o) prohibits conspiring to commit an offense under Section 924(c), which in turn prohibits, as relevant here, the possession of firearms in furtherance of a "crime of violence." In other words, Section 924(o) criminalizes conspiring to violate Section 924(c). "The elements [of § 924(o)] are: 1) a conspiracy, 2) to knowingly use, carry, possess, or discharge firearms, 3) in furtherance of a crime of violence." *United States v. Khan*, 309 F. Supp. 2d 789, 823 (E.D. Va. 2004). "To prove a violation of 18 U.S.C. § 924(o) . . . the Government must show: '(1) a conspiracy existed to commit the substantive offense; (2) [the defendant] knew of the conspiracy; and (3) [the defendant], with knowledge, voluntarily joined it.'" *United States v. Jenkins*, 628 F.

App'x 840, 841 (4th Cir. 2015) (quoting *United States v. Isnadin*, 742 F.3d 1278, 1307 (11th Cir. 2014)).

Section 924(o) is a standalone offense, distinct from Section 924(c), with a separate set of penalties. Section 924(c)(1)(A) criminalizes using, carrying, or possessing a firearm with the requisite connection to a crime of violence or drug trafficking crime, whereas Section 924(o) separately criminalizes the conspiracy to do the same. A successful conviction, consistent with the nature of conspiracy crimes, does not require the defendant to be convicted of, charged with, or even shown to have completed the predicate crime. *See United States v. Johnson*, 820 F. App'x 199, 204 (4th Cir. 2020) ("Firearms conspiracy 'requires proof of agreement,' not 'proof the substantive crime was actually committed.'") (citing *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010); *United States v. Wiley*, No. 1:19CR529-1, 2021 WL 1060207, at *2 (M.D.N.C. Mar. 19, 2021) (same).

Based on these elements, Keller's Count 2 conviction remains a valid conviction post-*Davis*. For purposes of this brief only, the United States agrees that the conspiracy convictions in Count 1 and Count 3 cannot be considered predicate crimes of violence supporting a Section 924(o) conviction. *See, e.g., United States v. Said*, 26 F.4th 653, 659 (4th Cir. 2022); *United States v. Simms*, 914 F.3d 229 (4th Cir.) (en banc). However, this holding does not require that Keller's Count 2 conspiracy conviction be vacated, as advocated by the defendant.

Three of the predicate offenses for this conspiracy conviction are still crimes of violence, defeating the defendant's claim that this conspiracy charge is now unconstitutional. Two of the predicate offenses for Count 2's conspiracy are Counts 9 and 11, which are charges for murdering a witness in violation of 18 U.S.C. § 1512(a)(1)(C). In a prosecution of Section 1512(a)(1)(C), the "government must prove (1) a killing or attempted killing, (2) committed with a particular

intent, namely, an intent (a) to 'prevent' a 'communication' (b) about 'the commission or possible commission of a Federal offense' (c) to a federal 'law enforcement officer or judge.'" *Fowler v. United States*, 563 U.S. 668, 672 (2011); *see also United States v. Ramos-Cruz*, 667 F.3d 487, 494 (4th Cir. 2012). The Fourth Circuit has explicitly held that this statute is a crime of violence under the force clause. *Mathis*, 932 F.3d at 265 ("[F]ederal witness tampering by murder also requires the unlawful killing of another, which may be accomplished by force exerted either directly or indirectly").[7]

Moreover, a third predicate for Count 2 is Interstate Domestic Violence Resulting in Death. Post-*Davis*, this conviction is still a crime of violence, as discussed *infra*.[8]

In support of his argument, Keller vaguely contends that no conspiracy count can qualify as a crime of violence and thus Count 2 must be vacated, without pointing to any case law or analysis as to why Count 2 – and specifically the charge of 18 U.S.C. § 924(o) – can no longer be a valid conviction in this case. *See* Mot., at 12-13. But this dramatically oversimplifies the issue, which is not whether Count 2 itself is a crime of violence – post-*Davis*, defendants can still be convicted of crimes that are not violent – but whether or not Count 2 is based on valid, predicate crimes of violence, as required by statute. As discussed here, Count 2 is based on at least three crimes of violence and thus it remains a valid conviction. *See Said*, 26 F.4th at 659 (upholding § 924(o) conviction based on crimes of violence and non-crimes of violence); *In re Pollard*, 931 F.3d 1318, 1321 (11th Cir. 2019) ("A federal prisoner raising a *Davis* claim cannot show that he was sentenced under § 924(c)'s residual clause if current binding precedent clearly establishes that

---

[7] Like the defendants in *Mathis*, here Keller was also charged and convicted of murder – not attempted murder – of witnesses, making an analysis of the divisible statute under the modified categorical approach unnecessary. *See Mathis*, 923 F.3d at 265 n. 21; Sec. Sup. Ind., ECF No. 107.

[8] Notably, Count 2 is also predicated on Count 3 (Conspiracy to Kill Witnesses, in violation of 18 U.S.C. § 1512(k)), which the defendant does not challenge as a crime of violence in his Motion.

his predicate offense qualifies as a crime of violence under the [force] clause."); *United States v. Steward*, 793 F. App'x 188, 190 (4th Cir. 2019) (finding that the court's plain error in instructing the jury that Hobbs Act conspiracy is a crime of violence under § 924(c) did not affect the defendant's substantial rights because the defendant was also convicted of Hobbs Act robbery, which had also been charged as a § 924(c) predicate), *cert. denied, Steward v. United States,* 141 S.Ct. 167 (2020); *Lowery v. United States*, No. 3:16-cv-226-RJC, 2021 WL 1225874, *3 (W.D.N.C. Mar. 31, 2021) (finding § 924(o) conviction still valid even though one of its predicate crimes of violence was invalid after *Johnson*).

Here, Keller cannot show that his Section 924(o) conviction is invalid in light of *Davis* because, regardless of *Davis*'s holding that the residual clause in Section 924(c)(3)(B) is unconstitutionally vague, murdering a witness and Interstate Domestic Violence Resulting in Death qualify as a crime of violence under the force clause, Section 924(c)(3)(A).

### d. The *Davis* decision does not affect Count 1.

Keller also challenges his conviction under Count 1, which is conspiracy to Commit Interstate Domestic Violence, in violation of 18 U.S.C. § 371. In his Motion, Keller appears to argue that Interstate Domestic Violence Resulting in Death is not a crime of violence (or is but not charged appropriately) and hence Count 1 must also be vacated. However, although the Count 1 conspiracy charge is a conspiracy to violate the Interstate Domestic Violence statute, whether Count 1 is valid does not depend on whether or not Interstate Domestic Violence is a crime of violence. The essential elements of 18 U.S.C. § 371 are "(1) an unlawful agreement between two or more people to commit a crime; (2) that the defendant knowingly and willingly participated in that conspiratorial endeavor; and (3) an overt act committed in furtherance of the conspiracy." *United States v. Daley*, 378 F. Supp. 3d 539, 561 (W.D. Va. 2019) (Moon, J.), *aff'd sub nom.*

*United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020). None of these elements require proof of a crime of violence. The *Davis* decision does not affect the validity of Count 1.

### III.    The defendant cannot overcome his procedural default.

As an initial matter, the government accepts that *Davis*'s constitutional rule is new and applies retroactively to cases on collateral review. *In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021).

Even so, by not raising his constitutional attack on Counts 2, 8, and 10 before those convictions became final, the defendant procedurally defaulted it. *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012). That default "may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523 U.S. at 621). The defendant cannot satisfy either standard.[9]

### A.    The defendant cannot demonstrate actual innocence.

To begin, the defendant is not actually innocent of Counts 2, 8, and 10. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

---

[9]    Some defendants have tried to argue that procedural-default rules do not apply to their cases because district courts lack jurisdiction to adjudicate criminal charges where a required element is missing from the indictment. That is incorrect. *See United States v. Moore*, 954 F.3d 1322, 1336 (11th Cir. 2020) ("[T]he law is clear: the omission of an element in an indictment does not deprive the district court of subject matter jurisdiction."); *United States v. Balde*, 943 F.3d 73, 91 (2d Cir. 2019) (holding that an indictment being defective under *Rehaif* "does not mean that the indictment fails to allege a federal offense in the sense that would speak to the district court's power to hear the case.").

The defendant cannot make this showing. During his plea hearing, Keller testified that he was in fact guilty of the charges contained in his plea agreement and that he pleaded guilty voluntarily and without coercion. Plea Hr'g Tr., ECF No. 272 at 22. He also stipulated in his plea agreement that "there is a sufficient factual basis to support each and every material factual allegation contained in the charging document to which he's pleading guilty." *Id.* at 19. During the hearing, Keller stated that he "helped [his] codefendant kill three people" by helping her plan it out, buying the gun, and distracting the people so that she could "do the deed." *Id.* at 38. Keller admitted that he "asked witnesses to come up with alibis so that we could cover our trail" and that he "destroyed evidence as well." *Id.* at 39. He admitted that he traveled across state lines, possessed a firearm as a felon, and that the deaths he took part in were best described as murder. *Id.* at 39-41. Keller's own words under oath demonstrate his guilt.

Moreover, as part of the plea agreement, the United States agreed to dismiss Counts 11 and 12, based on the murder of Kaylee Whetzel, the 5-year-old present in the house. Plea Agmt, ECF No. 147, at 4. The plea agreement, a Rule 11(c)(1)(C) plea to life imprisonment, also permitted to the defendant to avoid the death penalty. *Id.* at 5. Not only can Keller not demonstrate his actual innocence to the charges of which he was convicted, he cannot demonstrate that he was innocent of the foregone charges that are equally serious to those to which he pled and was sentenced. *See, e.g., United States v. Caso*, 723 F.3d 215, 221-22 (D.C. Cir. 2013) (noting that the foregone charges at issue in *Bousley* were, in fact, as serious as the challenged offense rather than more serious); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) (reasoning that not requiring a defendant to prove his innocence of equally serious foregone charges would result in a windfall to the defendant). While the Fourth Circuit has not yet considered this exact issue, it has interpreted *Bousley*'s requirement that a petitioner demonstrate his actual innocence of foregone charges. The

Fourth Circuit has held that "a defendant making a claim of actual innocence after a negotiated guilty plea must show that he is factually innocent of the underlying criminal conduct," but not that "he is actually innocent of other, dissimilar charged conduct." *United States v. Adams*, 814 F.3d 178, 184 (4th Cir. 2016). Keller does not claim that he is actually innocent of his convictions or of the dismissed, foregone charges. Because he cannot prove he is actually innocent of these equally serious foregone offenses, Keller is not entitled to relief.

### B.     The defendant cannot show cause for his default.

The defendant also cannot show cause for his default.

One way to establish cause would be to argue that *Davis* was so novel that no reasonable litigant would have thought to challenge Counts 1, 2, 7, 8, and 10 convictions on the grounds that the residual clause was unconstitutionally vague. But the Supreme Court has already explained that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). To the extent that an exception to this rule exists for truly novel claims, *see Reed v. Ross*, 468 U.S. 1, 16–17 (1984), that exception is too narrow to accommodate the defendant's case.

Although a claim that is truly "novel"—where the law at the time of appeal did not provide counsel with a "reasonable basis" for the claim—can constitute "cause" to excuse a procedural default, *see Reed v. Ross*, 468 U.S. 1, 16-17 (1984), a vagueness challenge to Section 924(c)(3)(B) does not meet that standard. In determining whether a claim is "novel" for purposes of establishing cause for a procedural default, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986). Defendants clearly had all of "the tools to

construct" a constitutional vagueness challenge to Section 924(c)(3)(B) before *Davis*. *Engle*, 456 U.S. at 133. *Dimaya* had determined that nearly identical language in 18 U.S.C. § 16(b) was unconstitutionally vague; *Johnson* had established a few years earlier that similar language in the ACCA's residual clause was unconstitutionally vague; and Justice Scalia had contended that the residual clause was unconstitutionally vague for several years before that, *see Sykes v. United States*, 564 U.S. 1, 28-35 (2011) (Scalia, J., dissenting); *James v. United States*, 550 U.S. 192, 230-231 & n.7 (2007) (Scalia, J., dissenting). Moreover, the foundational principle undergirding *Johnson*, *Dimaya*, and *Davis*—that vague criminal laws violate due process—has been on the books for nearly a century. *See, e.g., Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). Given this landscape, a vagueness challenge to Section 924(c)(3)(B), while perhaps unexpected before *Johnson*, nonetheless was not "novel." *See, e.g., Dugger v. Adams*, 489 U.S. 401, 409-410 (1989) (finding that a claim was not novel where "the legal basis for a challenge was plainly available"); *Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996) ("If the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier.") (citation and internal quotation marks omitted); *see also United States v. Smith*, 241 F.3d 546, 548-549 (7th Cir. 2001) (holding that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was not novel because "the foundation for *Apprendi*" existed long before the decision itself was announced).

Any novelty argument here is incompatible with both *Bousley* and binding Circuit precedent. In *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001), for example, the Fourth Circuit concluded that an *Apprendi* claim was not novel enough to excuse a procedural default, favorably citing a Seventh Circuit case reaching the same conclusion as to a defendant sentenced in 1992, a full eight years before *Apprendi* was decided. *Id.* at 145–46 (citing *United States v.*

*Smith*, 241 F.3d 546 (7th Cir. 2001)). *Sanders* cautioned that liberally construing arguments as novel enough to satisfy the cause-and-prejudice exception to procedural default would threaten to a create a world in which "[c]ollateral review would come … to serve as an all-purposive receptacle for claims which in hindsight appear more promising than they did at the time of trial." *Id.* at 146.

The same reasoning applies here. Had the defendant wanted to raise a *Davis*-type claim about his convictions for Counts 1, 2, 7, 8, and 10, he was entirely capable of doing so before now —just like a defendant who wanted to raise an *Apprendi*-style claim in 1992. *Accord Dugger v. Adams*, 489 U.S. 401, 409–10 (1989) (concluding that a claim was not novel where "the legal basis for a challenge was plainly available"); *Frizzell v. Hopkins*, 87 F.3d 1019, 1021 (8th Cir. 1996) ("If the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." (citation and internal quotation marks omitted)). Consistent with *Sanders*, the defendant's failure to raise such a claim earlier is therefore not excusable on novelty grounds. *See Mayo*, 2020 WL 2476167, at *2 ("Given the plethora of challenges levied against § 922(g), Petitioner's claim does not qualify as novel." (citing *Williams* and other circuit-level cases)).

Another way to establish cause for a procedural default would be to show that defense counsel performed deficiently by failing to raise a particular claim. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). While the defendant has not yet linked his *Davis* claim to a claim of ineffective assistance of counsel, the government notes that doing so in an attempt to overcome his procedural default would be unavailing. The general rule is that "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996); *see also United States v. Dyess*, 730 F.3d 354, 363

(4th Cir. 2013) (holding that a defense attorney's failure to anticipate *Apprendi* did not constitute deficient performance). That principle applies equally to *Davis* claims. *See United States v. Finley*, 805 F. App'x 823, 827 (11th Cir. 2020) (rejecting *Rehaif*-based ineffectiveness claim because "precedent clearly forecloses an ineffective-assistance-of-counsel claim based on failure to raise an objection that would not succeed under current law, but which could succeed depending on a forthcoming Supreme Court decision").

## C. The defendant cannot show prejudice resulting from his default.

Even if the defendant could establish cause for his procedural default based on *Davis*'s purported novelty, he still cannot show prejudice.

When a defendant has "not attempt[ed] to withdraw his guilty plea in the district court, [the Fourth Circuit] review[s] his plea challenge for plain error." *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc) (citing *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018)). A defendant satisfies the plain-error standard by demonstrating "(1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018). On collateral review, the prejudice standard is more exacting still. *See United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting "use of the 'plain error' standard to review [a] § 2255 motion" and stating "that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal"); *accord United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994) ("hold[ing] that the *Frady* cause and prejudice standard applies to … collateral challenges to unappealed guilty pleas").

When raising a forfeited attack on a guilty plea, a defendant can only demonstrate that an error affected his substantial rights (or establish prejudice on collateral review) by "show[ing] a

reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). A defendant must satisfy this standard even if he establishes that the district court committed an error in his plea colloquy. *See, e.g.*, *United States v. Cannady*, 283 F.3d 641, 647–48 (4th Cir. 2002). Here, the defendant cannot make the requisite showing.

Here, the defendant would have pled guilty notwithstanding his claim about *Davis* error, because all of the relevant predicate offenses are crimes of violence post-*Davis* (*see* above). Because Counts 1, 2, 7, 8, and 10 are not affected by the *Davis* decision, the defendant's decision whether or not to plead guilty would not have been affected by the new rule announced by *Davis*. He thus cannot show prejudice sufficient to overcome his procedural default.

Given that the cause-and-prejudice standard is more exacting than plain-error review, *see Frady*, 456 U.S. at 166, it follows *a fortiorari* that the defendant therefore cannot establish prejudice sufficient to escape his procedural default. Based upon the foregoing, the United States requests that the court deny relief to the defendant based upon his *Davis*-based challenge to his convictions for Counts 1, 2, 7, 8, and 10.

### IV. If the Court vacates any convictions, the Court can issue an Amended Judgment without a resentencing hearing.

If the Court agrees with the defendant's arguments and vacates all or some of Counts 1, 2, 7, 8, and 10, the United States respectfully asks the Court to issue an Amended Judgment. A resentencing hearing is not warranted.

Where an error of constitutional magnitude has occurred, "the goal of § 2255 review is to place the defendant 'in exactly the same position he would have been had there been no error in the first instance.'" *United States v. Hadden*, 475 F.3d 652, 667 (4th Cir. 2007). Because habeas relief is equitable in nature, a district court "broad and flexible" power to "fashion an appropriate

remedy." *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007); *see also Schlup v. Delo*, 513 U.S. 298, 332 (1995); *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (authorizing district court to resentence defendant to reflect specific performance of breached plea agreement rather than vacating conviction). To that end, Section 2255 lists four broad remedies a court may consider: (1) discharge the prisoner; (2) grant a new trial; (3) resentence; or (4) correct a sentence. 28 U.S.C. § 2255.

There is no requirement the court conduct a new sentencing hearing if a conviction can merely be excised or the sentence corrected. *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). Ordinarily, the vacatur of a Section 924(c) conviction would justify a resentencing hearing because, typically, the Court fashions a sentencing package. When it selects a sentence on the other counts, it takes into account the mandatory consecutive term on the Section 924(c) or 924(j) conviction. *See, e.g., Dean v. United States*, 137 S. Ct. 1170, 1178 (2017) (court may take consecutive Section 924(c) sentence into account when selecting sentence for the predicate count); *United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016) (a full resentencing authorizes district court to unbundle a sentencing package); *United States v. Fowler*, 749 F.3d 1010, 1016 (11th Cir. 2014) ("On direct appeal, we have routinely, without hesitation and as a matter of course, vacated entire sentences and remanded for resentencing on all surviving counts after vacating a conviction or sentence on some, but not all, of the counts."); *see also Davis*, 139 S. Ct. at 2336 ("[W]hen a defendant's § 924(c) conviction is invalidated, courts of appeals routinely vacate the defendant's entire sentence on all counts so that the district court may increase the sentences for any remaining counts if such an increase is warranted." (internal quotation marks omitted)); *United States v. Pepe*, No. 16-4589, 2021 WL 2287439, at *1 (4th Cir. June 4, 2021) (same). However, in this case, other counts also carry a penalty of life imprisonment. Those counts, and their penalties, are undisturbed

by the issues raised by the defendant and cannot be increased or lowered in light of a vacatur of the § 924(j) count. Accordingly, there is no reason to vacate the defendant's existing sentence on those counts or to hold a new sentencing hearing. Keller cannot be sentenced to any sentence on the remaining counts other than the life imprisonment sentences already imposed.

### Conclusion

*Davis* did not affect the defendant's convictions in Counts 1, 2, 7, 8, and 10. Nor can the defendant make neither the actual-innocence nor cause-and-prejudice showing necessary to overcome his procedural default. The Court should therefore deny his habeas petition.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney


/s/Heather L. Carlton
Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902
Tel: 434.293.4283
Heather.carlton@usdoj.gov


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been provided via electronic means via the Court's CM/ECF filing system to counsel of record, this 23rd day of May, 2022.

/s/Heather L. Carlton
Assistant United States Attorney